UNITED STATES of America, Plaintiff–Appellee, Cross–Appellant,

v.

Pedro GOMEZ, Fernando Magana, and Rigoberto Vela, Defendants–Appellants, Cross–Appellees.

Nos. 92–3960, 92–3995, 93–1534 and 93–1567.

United States Court of Appeals, Seventh Circuit.

Argued April 6, 1994.

Decided May 16, 1994.

---

Barry R. Elden, Asst. U.S. Atty., Jonathan C. Bunge (argued), Crim. Receiving, Appellate Div., Chicago, IL, for plaintiff-appellee.

Gary J. Ravitz, Chicago, IL, for defendants-appellants.

Before COFFEY, EASTERBROOK, and MANION, Circuit Judges.

EASTERBROOK, Circuit Judge.

Pedro Gomez, Fernando Magana, and Rigoberto Vela were convicted of distributing cocaine. The only issues on appeal concern their sentences.

■■■■ 1. Vela pleaded not guilty and went to trial. The jury found him guilty. At sentencing, Vela asked the judge to reduce his offense level on account of acceptance of responsibility. U.S.S.G. § 3E1.1.

Unsurprisingly, the judge said no, because this reduction is designed as a reward for a guilty plea, which saves the judicial system the burden of trial, or for some equivalently concrete act, such as pretrial payment of full restitution. See *United States v. Bean*, 18 F.3d 1367 (7th Cir.1994). Vela did not take any concrete step demonstrating acceptance of responsibility, and the judge was not impressed by talk.

Surprisingly, Vela has appealed. Surprising because he hasn't a leg to stand on under the Guidelines, which make clear that this reduction is designed to reward pre-trial deeds rather than post-trial words. *Bean*, 18 F.3d at 1369; *United States v. Beserra*, 967 F.2d 254 (7th Cir.1992). Surprising because this court has never directed a district judge to award this reduction for a post-trial change of heart—indeed, has never directed a district judge to award the reduction even when the defendant pleaded guilty well in advance of trial. The standard of review is abuse of discretion, which is to say that we ask whether the decision was within a zone of reasonable responses to the facts. Add the Sentencing Commission's statement that the reduction "is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse", U.S.S.G. § 3E1.1 application note 2, and it becomes impossible to see how any reasonable person could disagree with the district judge, let alone how every reasonable person must do so—which is what Vela has to show to obtain relief from the court of appeals. See *Concrete Pipe and Products of California, Inc. v. Construction Laborers Pension Trust*, —— U.S. ——, ——, 113 S.Ct. 2264, 2280, 124 L.Ed.2d 539 (1993) (observing that a judicial decision cannot be called "unreasonable" unless "no reasonable person would find it to be" appropriate).

Perhaps it is not so surprising that Vela has appealed, given the volume of such claims in this circuit. Recent published opinions include *United States v. Osmani*, 20 F.3d 266 (7th Cir.1994); *United States v. Robinson*, 20 F.3d 270 (7th Cir.1994); and *United States v. Rosalez–Cortez*, 19 F.3d 1210 (7th Cir.1994). There are more unpublished orders in the same vein. What we cannot understand is *why* people continue to advance foredoomed arguments. Although the Guidelines reserve the possibility of a reduction for a person who accepts responsibility for his acts but denies criminal liability—for example, admitting the charged conduct but contending that the statute is unconstitutional, U.S.S.G. § 3E1.1 application note 2—Vela has not contended that he satisfies this exception. He argues, instead, that he elected not to plead guilty because the prosecutor wanted too high a sentence (a subject we discuss below). That is to say, he was utterly unwilling to accept *responsibility* for his deeds or to take any step implying that he would refrain from criminal activity in the future; he simply wanted to obtain the lowest punishment he could, by any strategy available. His argument is the antithesis of acceptance of responsibility.

If this were a civil case, we would award sanctions under Fed.R.App.P. 38 for the taking of a frivolous appeal. We have generally refrained from using this measure in criminal cases (although there are exceptions, see *Wisconsin v. Glick*, 782 F.2d 670 (7th Cir. 1986)), but that the risk of sanctions is slight affords no excuse for a lawyer to violate his ethical duty to the court to refrain from making frivolous arguments. If the defendant insists on taking an appeal, the lawyer can fulfil his obligations to both court and client by filing an *Anders* brief.

■■■■ 2. Gomez and Magana pleaded guilty and received the reduction that Vela wanted. All three are discontented with the fines the judge imposed. According to the table of fines in U.S.S.G. § 5E1.2(c)(3), each of the three was subject to a minimum fine of at least $10,000. Guideline 5E1.2(a) says that the judge "shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine." This language is to be taken seriously: the judge *must*

impose a fine, unless the defendant demonstrates that he cannot pay *anything*, either at sentencing or in the foreseeable future. *United States v. Ahmad*, 2 F.3d 245 (7th Cir.1993); *United States v. Turner*, 998 F.2d 534 (7th Cir.1993); *United States v. Ferrin*, 994 F.2d 658, 665–66 (9th Cir.1993). Defendants bear a heavy burden, because almost everyone has or will acquire some assets.

■ Although Gomez, Magana, and Vela appeared to be penniless at the time of sentencing, the district judge observed that they are likely to earn wages in prison. He accordingly fined each defendant $3,000, to be paid from prison earnings. This is a downward departure from the guidelines; a claim that the judge should have made a greater departure ordinarily is outside our jurisdiction. *United States v. Franz*, 886 F.2d 973 (7th Cir.1989). But defendants say that the judge made a legal error, and an appeal from a sentence founded on a mistake of law is within our jurisdiction even if the dispute concerns the fact or extent of departure. *United States v. Poff*, 926 F.2d 588, 590–91 (7th Cir.1991) (en banc).

■ The legal error, according to defendants, is the belief that prison wages are available to satisfy fines. Yet the regulations establishing prison trust accounts do not contain spendthrift or anti-assignment clauses. Presumably prison administrators seek to achieve some objective by rewarding prisoners for their labor; confiscating 100% of the prisoner's wages would eliminate any incentive to work and defeat that objective. Regulations of the Bureau of Prisons accordingly permit prisoners to keep half of their wages no matter what their obligations; the other half, however, is available for alimony, civil debts—and fines. 28 C.F.R. § 545.11(a)(3). Neither the text of the regulations nor any of defendants' arguments suggests that funds available to pay civil debts should be unavailable to pay criminal debts. Prisoners have no inherent right to chocolate bars and other snacks; we have accordingly held that trust accounts may be tapped to pay restitution. *United States v. House*, 808 F.2d 508 (7th Cir.1986). Just so with fines. Accord, *United States v. Tosca*, 18 F.3d 1352, 1355 (6th Cir.1994).

■ Having decided that prison wages are available in principle to pay fines, we have no authority to inquire into the precise amount of the fine the district judge specified. How far to depart below the minimum of the range is a question committed to the court's discretion. One feature of the Guidelines may influence the use of that discretion in future cases: § 5E1.2(g) says that length of an installment schedule to pay a fine "generally should not exceed twelve months." The district judge anticipated that these defendants would pay throughout their terms of incarceration. Nothing was made of this proviso in the district court or the briefs on appeal, and "generally" is a plastic term that could not support our intervention on a theory of "plain error."

3. Vela is a repeat offender. In April 1990 he pleaded guilty, in the Circuit Court of Cook County, to a charge of possessing cocaine. The prosecutor accordingly asked the district judge to enhance Vela's sentence under 21 U.S.C. § 841(b)(1)(B), which provides:

> If any person commits [a violation of this section] after one or more prior convictions for an offense punishable under this paragraph, or for a felony under any other provision of this subchapter or subchapter II of this chapter or other law of a State, the United States, or a foreign country relating to narcotic drugs, marihuana, or depressant or stimulant substances, have become final, such person shall be sentenced to a term of imprisonment which may not be less than 10 years and not more than life imprisonment. . . .

The crime to which Vela pleaded guilty in Illinois satisfies this language, but Vela argued, and the district court held, that he had not been "convicted" because he received a diversionary sentence. The state judge put Vela on a form of probation reserved for first offenders. The state statute authorizing this form of sentence specifies that at the end of the probationary period, the court shall "discharge the person and dismiss the proceedings against him" unless he violated the terms of the probation. 720 ILCS 570/410(f). The statute continues: "discharge and dis-

missal under this Section is not a conviction for purposes of disqualifications or disabilities imposed by law upon conviction of a crime." Vela completed his probation and was discharged; accordingly, the district court held, he lacked a "prior conviction" for purposes of § 841(b)(1)(B). This holding depends on a conclusion that state law supplies the definition of a "conviction" under § 841(b)(1)(B). Relying on *Dickerson v. New Banner Institute, Inc.,* 460 U.S. 103, 103 S.Ct. 986, 74 L.Ed.2d 845 (1983), which held that another recidivist statute, 18 U.S.C. § 922(g), used federal rather than state law, and that a diversionary disposition following the admission of criminal acts is a "conviction" even if the state restores the defendant's civil rights, the United States has appealed. Congress amended § 922 in 1986 to use state law as the benchmark, see *United States v. Glaser,* 14 F.3d 1213 (7th Cir. 1994), but did not alter § 841(b)(1)(B). The United States argues that *Dickerson* therefore requires the district court to sentence Vela to at least 10 years' imprisonment.

■ Vela contests our jurisdiction. Once the district court ruled that Vela did not have a prior conviction, the United States was entitled to appeal before the court pronounced sentence. 21 U.S.C. § 851(d)(2). According to Vela, this is the exclusive avenue for appellate review. Having waited until the district court imposed sentence, the United States is out of luck, Vela submits. Yet § 851(d)(2) does not purport to override other statutes authorizing appeals—in this case, 18 U.S.C. § 3742. Congress enacted § 851(d)(2) in 1970, when federal prosecutors lacked any general authority to appeal from final decisions in criminal cases. Broad authority was first supplied later that year by amendments to the Criminal Appeals Act, 18 U.S.C. § 3731. Section 851(d)(2) was part of Pub.L. 91–513, 84 Stat. 1269 (1970), and § 3731 appeared in Pub.L. 91–644, 84 Stat. 1890 (1970). Even the amended Criminal Appeals Act did not permit the United States to appeal from a sentence, in part because of concern that such an appeal would violate the double jeopardy clause of the fifth amendment. (This is why § 851(d)(2) permits the United States to appeal before the court sentences the defendant.) Not until some years later did Congress permit prosecutors to appeal from sentences. For the history of prosecutorial appeals in criminal cases see *United States v. DiFrancesco,* 449 U.S. 117, 132–36, 101 S.Ct. 426, 434–37, 66 L.Ed.2d 328 (1980); *Serfass v. United States,* 420 U.S. 377, 383–87, 95 S.Ct. 1055, 1060–62, 43 L.Ed.2d 265 (1975); *United States v. Wilson,* 420 U.S. 332, 336–39, 95 S.Ct. 1013, 1018–20, 43 L.Ed.2d 232 (1975).

As part of the compromise that produced the Sentencing Reform Act of 1984, prosecutors obtained a general power to appeal from erroneous sentences. By then, *DiFrancesco* had made it clear that such appeals do not transgress the double jeopardy clause. Under § 3742(b)(1) the United States may appeal from any sentence that "was imposed in violation of law". Section 851(d)(2) can hardly be thought to repeal or qualify a statute enacted 14 years later. When Congress enacted § 851(d)(2) a pre-sentence appeal made sense; there would be no post-sentence appeal by either side, so there was no prospect of duplication. Today a pre-sentence appeal would fragment the case. Piecemeal appeals are never less appropriate than in criminal cases, and we have no indication that Congress has made such division obligatory. The prosecutor's appeal is within our jurisdiction.

■ Whether we should decide the appeal on the merits is a different question. Our first step in evaluating a claim that the district court erred is to ascertain what the judge did and why. Most judges of this court read the district court's opinion before reading the appellant's attack on it. Of course, this presumes that we *have* the district judge's opinion. To ensure that we do, Circuit Rule 30(a) requires the appellant to include the opinion, or a transcript recording an oral statement of reasons, as an appendix to the brief. The United States did not comply with Rule 30(a). Its brief as an appellant has no appendix of any kind—not the judgment being challenged, not the reasons the district court gave in support of the judgment, nothing. At oral argument the prosecutor had no reason for this omission but rationalized his conduct by stating that we could fish the reasons out of the record.

For the two judges on the panel whose chambers are outside the court's headquarters, that is much easier said than done. In essence, the United States wanted a one-sided presentation on appeal. It told us why in its view the district judge erred without allowing the judge an opportunity to explain why he acted as he did.

Soon after beginning to hear appeals under the Sentencing Guidelines, we reminded lawyers that Circuit Rule 30(a) applies to sentencing issues—and that it also applies to cross-appeals by the United States seeking increases in sentences.

The dominant role of the sentencing judge's findings and reasons means that we need ready access to them. Seventh Circuit Rule 30(a) requires the appellant to "submit, bound with the main brief, an appendix containing the judgment under review and any opinion, memorandum of decision, findings of fact and conclusions of law, *or oral statement of reasons delivered by the trial court* ... upon the rendering of that judgment" (emphasis added). Rule 30(a) thus requires counsel to attach to the brief the "reasons" that [18 U.S.C.] § 3553(c) obliges the judge to state, together with any findings of fact and conclusions of law that support these reasons.

Circuit Rule 30(c) requires counsel for any appellant to certify that the brief contains the materials specified in Circuit Rule 30(a). Although counsel for [defendants] made the necessary certificate, neither brief contains the judge's statement of reasons for the selection of sentence. The United States, which filed a brief as appellant when challenging [one defendant's] sentence, did not even make the required certificate; the Clerk's Office should have rejected this brief. Being an appellee on one aspect of the case (as the United States is on [this defendant's] appeal) does not eliminate the need to perform an appellant's duties. The deficiencies in these two cases are not unusual; fewer than half of the appellants in recent cases under the Guidelines have furnished the materials for which Rule 30(a) calls.

Because none of the three appellants supplied the district judges' statements of reasons, either attached to the brief or in a separate appendix, we scrounged the record for them independently. We hope we have found them all. Because sentencing proceedings may be lengthy and spread over several appearances (as [one defendant's] was), counsel's aid in collecting the district court's reasons is especially important. (It would help, too, if district judges marshal their findings and reasons in sentencing cases in the same way they do when making oral findings and conclusions under Fed.R.Civ.P. 52(a).) Briefs *must* contain these statements of reasons. Although we understand the difficulties counsel face if the district judges' explanations are scattered through transcript, this is no excuse for failure even to try to present the necessary materials.

*United States v. White*, 888 F.2d 490, 495–96 (7th Cir.1989) (emphasis in original). The remarks in *White* are apropos here.

Provisions comparable to Circuit Rule 30(a) have been in the court's rules for a long time. In 1959 we announced the appropriate response to a violation of this vital requirement: summary affirmance. *Sparrow v. Yellow Cab Co.*, 273 F.2d 1 (7th Cir.1959). See also, e.g., *Mortell v. Mortell Co.*, 887 F.2d 1322, 1327 (7th Cir.1989); *Teitelbaum v. Curtis Publishing Co.*, 314 F.2d 94 (7th Cir. 1963); Annotation, 55 A.L.R.Fed. 521 § 8(b) (1981 & 1993 Supp.). Just as we have been reluctant to impose monetary penalties on criminal defendants who take frivolous appeals, so we have hesitated to use this sanction in criminal cases, preferring to visit the consequences on the errant lawyers. See *United States v. Smith*, 953 F.2d 1060, 1068 (7th Cir.1992). As we observed in *Smith*, "[t]ime in jail is disproportionate to this delict—and summary affirmance might well be followed by a collateral attack on the adequacy of counsel, reopening the subject." When the prosecutor rather than the defendant is appealing, the dominant consideration is that releasing a guilty person (or dramatically reducing his sentence) is disproportionate to the wrong.

Still, we need to take effective steps to ensure that Circuit Rule 30 is obeyed. Just as it is essential that district judges give

reasons to facilitate appellate review, *Talley v. Lane,* 13 F.3d 1031 (7th Cir.1994); *Pasquino v. Prather,* 13 F.3d 1049 (7th Cir.1994); *Feldman v. Bahn,* 12 F.3d 730 (7th Cir.1993); Circuit Rule 50; so it is essential that the parties make these reasons available to us. In *Smith* we ordered the defendant's lawyer to show cause why he should not be subject to professional discipline for a violation of our rules. See also *In re Mix,* 901 F.2d 1431 (7th Cir.1990). We shall take the same step for the three prosecutors who signed the United States' brief in this case, reserving summary affirmance for civil cases.

■ Section 841(b)(1)(B) augments the punishment for a federal drug offense if the crime occurs after "one or more prior convictions for ... a felony under ... [a] law of a State ... relating to narcotic drugs, marihuana, or depressant or stimulant substances, have become final". According to *Dickerson,* the meaning of the word "conviction" in a federal statute is a question of federal law unless Congress provides otherwise. The version of 18 U.S.C. § 922 in force at the time of *Dickerson* provided that a person "who is under indictment for, or who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year" could not possess a firearm. 18 U.S.C. (1982 ed.) § 922(g), (h). Vela observes that § 841(b)(1)(B) speaks explicitly of state law, as §. 922 did not, and argues that this makes all the difference. Yet the term "conviction" in § 841(b)(1)(B) precedes any reference to the body of law involved. True enough, one must have been convicted of a "felony under ... [the] law of a State", but in context this means only that state law defines the difference between a felony and a misdemeanor. Section 922 drew that line at one year regardless of state law; § 841(b)(1)(B) uses state law to mark the boundary.

Nothing in § 841(b)(1)(B) suggests that the definition of a "conviction" depends on state law. Still less does it suggest that a defendant who has plainly been "convicted" as state law understands that term—for Illinois treated Vela's plea and sentence as a "conviction" during the duration of his probation—obtains the benefit of a state's effort to wipe the slate clean retroactively. When Congress amended the gun control statutes, it treated the definition of a "conviction" and the effect of expungement separately. A definitional provision in 18 U.S.C. § 921(a)(20), added in 1986, provides:

What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

What Vela really wants is a declaration that a state's effort to eliminate all civil disabilities after the completion of the sentence obliterates the "conviction" for purposes of federal law. Section 841(b)(1)(B) lacks any provision comparable to the last sentence of § 921(a)(20), and it would be inappropriate to treat these substantially different statutes as if they had the same meaning. We therefore agree with *United States v. Campbell,* 980 F.2d 245, 249–51 (4th Cir.1992), which holds that federal rather than state law defines "conviction" for purposes of § 841(b)(1)(B), and that "expunction does not alter the legality [or existence] of the previous conviction", *Dickerson,* 460 U.S. at 115, 103 S.Ct. at 993, for purposes of federal law. Cf. *United States v. Morales,* 854 F.2d 65, 68 (5th Cir. 1988) (the date on which a state conviction becomes "final" is a question of federal law under § 841(b)(1)(B)).

Vela's sentence is vacated, and his case is remanded for resentencing under § 841(b)(1)(B). The sentences of Gomez and Magana are affirmed.