**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Marcus M. McALLISTER, a/k/a Markiebo, Robert Gaston, a/k/a Rob, Mark Mike, a/k/a Spike, and Mark Shorter, Defendants–Appellants.**

**Nos. 93–1375, 93–1376, 93–1377 and 93–1587.**

United States Court of Appeals, Seventh Circuit.

Argued Feb. 17, 1994.

Decided July 20, 1994.

---

Robert Lee Garrison, Office of U.S. Atty., Crim. Div., Fairview Heights, IL (argued), for U.S.

Daniel P. Reardon, Jr., Clayton, MO, for Marcus McAllister and Robert Gaston.

* The Honorable James B. Moran, Chief Judge of the United States District Court for the Northern

Brian Trentman, Kuehn & Trentman, Belleville, IL (argued), for Mark Mike.

Terence Niehoff, St. Louis, MO (argued), for Mark Shorter.

Before BAUER and CUDAHY, Circuit Judges, and MORAN, District Judge.*

MORAN, District Judge.

Defendants Marcus McAllister, Robert Gaston, Mark Mike and Mark Shorter were found guilty of conspiracy to distribute cocaine. In addition, Gaston and Mike were found guilty of money laundering, and Gaston was found guilty of interstate travel in aid of racketeering. Defendants now appeal on several grounds: the enhancement of their sentences, prosecutorial misconduct, the finding of one conspiracy, the prosecutor's closing argument, and the quantity of cocaine for which they were found responsible.

### a. Sentence enhancement for McAllister, Mike, and Shorter

#### 1. Notice

The first trial of Mike, Shorter and McAllister ended in a mistrial. In their second trial the government filed notice that it would seek enhancement of their sentences based on prior convictions. Under the enhanced sentencing notification provision

> [n]o person who stands convicted of an offense under this part shall be sentenced to an increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or

District of Illinois, is sitting by designation.

counsel for the person) stating in writing the previous convictions to be relied upon. 21 U.S.C. § 851(a)(1).

Defendants first contend it was improper to enhance their sentences because the government did not seek enhancement before the first trial. However, the trial after a mistrial is not a continuation of the mistrial— it stands alone. *See United States v. Whaley,* 830 F.2d 1469, 1478 (7th Cir.1987) ("the essential element of a mistrial, its lack of finality, means that there is no legal determination in the case at bar. However, a mistrial has other legal consequences, for it is a premature, inconclusive end to a trial that was in fact conducted"), *citing United States v. Dinitz,* 424 U.S. 600, 607, 96 S.Ct. 1075, 1079, 47 L.Ed.2d 267 (1976) ("government had the right to obtain a superseding indictment anytime prior to defendant's retrial"). Therefore, enhancement can be sought before a second trial regardless of whether it was sought before a first trial that ended in a mistrial.

■■ Defendants also contend the government did not provide them with timely notice that it would seek enhancement. Section 851(a)(1) requires the government to provide notice it will seek enhancement by filing an information with the court and serving a copy of that information on defendants "before trial." *United States v. Belanger,* 970 F.2d 416, 418 (7th Cir.1992). All circuits interpreting "before trial" have concluded it means before *voir dire,* and we agree. *See United States v. Gonzalez–Lerma,* 14 F.3d 1479, 1484 (10th Cir.1994) ("filing anytime before jury selection is sufficient"); *United States v. White,* 980 F.2d 836, 842 (2d Cir. 1992); *United States v. Johnson,* 944 F.2d 396, 407 (8th Cir.1991) ("§ 851 requires filing before jury selection begins," allowing defendant time to determine whether to plea or go to trial, and "to plan his trial strategy with full knowledge of the consequences of a potential guilty verdict"); *United States v. Brown,* 921 F.2d 1304, 1308–09 (D.C.Cir. 1990) (court declined to define "before trial," but held filing before *voir dire* was timely where it was after a two-day delay in the start of trial, and oral notification was provided on the day trial was scheduled to begin);

*United States v. Jordan,* 810 F.2d 262, 268 (D.C.Cir.1987) (filing after judge heard evidence on motion to suppress but before *voir dire* was timely.) *See also United States v. Weaver,* 905 F.2d 1466, 1481 (11th Cir.1990) (government complied with § 851, despite filing after trial commenced, by serving defendant and his counsel with a copy of the information before jury selection).

At oral arguments Shorter's counsel claimed the government did not file an information until the third day of the second trial. According to counsel, he and his co-counsel remember it that way, and that is the way it looks in the "legal file." The informations, however, are stamped November 2, 1992, indicating the government filed them with the court and served copies on defendants the day the trial court conducted *voir dire* and the jury was sworn in. Also, at a February 5, 1993 hearing, Mike's counsel observed that "[t]he Government filed a notice indicating prior to trial that my client had been convicted" of a previous offense. (Rec.Vol. 21 p. 4.) On page 19 of defendants' brief, they state: "The notice of enhancement . . . was filed as to defendants Mike, Shorter and McAllister on November 2, 1993 [sic]. This was on the morning the defendants' second trial was scheduled to begin." Finally, on page 24, the brief says, "the government file[d] its notice to enhance . . . minutes before jury selection began."

In sum, the chronology of events presented by the government is corroborated by the record and defendants' brief, while the chronology presented at oral arguments by defendants' counsel is flatly contradicted by the record. Therefore, we conclude the government satisfied § 851(a)(1) because on November 2, 1992, before *voir dire,* it filed a notice of enhancement with the court and served defendants with notice it would seek enhancement of their sentences.

### 2. Prior convictions of Mike and Shorter

■ Section 841(b)(1)(B) enhances the sentence for a federal drug offense "after one or more prior convictions . . . for an offense punishable under this paragraph, or for a felony under any other provision of this subchapter or subchapter II of this chapter or

other law of a State, the United States, or a foreign country relating to narcotic drugs, marihuana, or depressant or stimulant substances, have become final. . . ."

In 1990 and 1991 respectively, defendants Mike and Shorter pled guilty to felony offenses under Illinois law and both received probation. They argue their guilty pleas and probation should not be considered "prior convictions" for purposes of sentence enhancement. Unlike Mike, Shorter completed his probation and was discharged. The Illinois statute pursuant to which he received probation provides that "discharge and dismissal under this Section is not a conviction for purposes of this Act or for purposes of disqualifications or disabilities imposed by law upon conviction of a crime." Ill.Rev.Stat. Ch. 56½ § 1410(g). Based on Shorter's discharge under Illinois law, he contends his probation is not a prior conviction under § 841(b)(1)(B). The government argues probation is a prior conviction under § 841(b)(1)(B) regardless of whether a person completes it and is discharged.

In *Dickerson v. New Banner Institute,* 460 U.S. 103, 111–12, 103 S.Ct. 986, 991–92, 74 L.Ed.2d 845 (1983), David Kennison had pled guilty to a violation of Iowa law and was placed on probation. 460 U.S. at 108, 103 S.Ct. at 989. Upon completion of his probation, Iowa law provided for Kennison's discharge and the deferred judgment against him was expunged from his record. *Id.* Nonetheless, his guilty plea was later used to deny him a license to deal firearms under a federal law applicable to anybody "who has been convicted in any court of . . . a crime punishable by imprisonment for a term exceeding one year." 460 U.S. at 105, 103 S.Ct. at 987.

The Court in *Dickerson* held that "[a] plea of guilty . . . is itself a conviction. Like a verdict of a jury it is conclusive. More is not required; the court has nothing to do but give judgment." 460 U.S. at 112–13, 103 S.Ct. at 991–92, *quoting Kercheval v. United States,* 274 U.S. 220, 223, 47 S.Ct. 582, 583, 71 L.Ed. 1009 (1927). The Court in *Dickerson,* noted it did have more than a guilty plea to consider because the state court had imposed probation, and a court does not put

someone on probation if he is not guilty of a crime. *Id.* 460 U.S. at 113–14, 103 S.Ct. at 992–93. In the gun control statutes "Congress sought to rule broadly" and referred to "a crime *punishable* by imprisonment for a term exceeding one year." *Id.* at 113, 103 S.Ct. at 992. By focusing on the potential punishment for a crime, Congress showed its lack of interest in whether the actual sentence is probation based upon a guilty plea. *Id.*

The Court then turned to determining whether Kennison's probation was a conviction, even though he completed his probation, was discharged and had his conviction expunged under Iowa law. The Court held that "expunction of a state conviction was not intended by Congress automatically to remove the federal firearms disability" because "expunction under state law does not alter the historical fact of the conviction" and "does not signify that the defendant was innocent of the crime to which he pleaded guilty." 460 U.S. at 115, 103 S.Ct. at 993.

Congress subsequently manifested its disapproval of *Dickerson:*

> What constitutes a conviction . . . shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

18 U.S.C. § 921(a)(20). *See Beecham v. United States,* —— U.S. ——, ——, 114 S.Ct. 1669, 1671, 128 L.Ed.2d 383 (1994) (reading provision as a whole, "the law of the jurisdiction in which the proceedings were held" determines what constitutes a conviction *and* whether a person was pardoned, had his civil rights restored or had a conviction expunged or set aside); *United States v. Glaser,* 14 F.3d 1213, 1217 (7th Cir.1994) ("amended law permits a state to restore all civil rights, including the right to possess firearms, if it wants"). Thus, while interpreting federal statutes is a question of federal law, Con-

gress can make the meaning of a statute dependent on state law. *See Dickerson,* 460 U.S. at 111–12, 103 S.Ct. at 991–92 ("[w]hether one has been 'convicted' within the language of the gun control statutes is necessarily . . . a question of federal, not state, law, despite the fact that the predicate offense and its punishment are defined by the law of the State. This makes for desirable national uniformity unaffected by varying state laws, procedures, and definitions of conviction"); *United States v. Campbell,* 980 F.2d 245, 250 n. 6 (4th Cir.1992); *United States v. Morales,* 854 F.2d 65, 68 (5th Cir.1988).

Although Congress disapproved of the result in *Dickerson,* the reasoning in *Dickerson* has been applied to § 841(b)(1)(B) to conclude that "convictions" includes probation. In *Campbell,* the court was "guided" by *Dickerson* to conclude that "[f]or purposes of sentence enhancement, the issue is not whether there has been a formalistic adjudication of guilt; rather, the district court must consider whether the defendant has been previously convicted and sentenced for a criminal drug offense." 980 F.2d at 251. The court held that a "sentence of probation, though subject to expunction, constitutes a 'prior sentence' [sic] for purposes of sentence enhancement." *Id. Accord United States v. Meraz,* 998 F.2d 182, 184 (3d Cir.1993); *Morales,* 854 F.2d at 69 (convictions subject to expungement after probation become final when the time for appeal passes). Probation is not imposed upon someone who is not guilty of a crime. *Dickerson,* 460 U.S. at 113–14, 103 S.Ct. at 992–93. The applicable state statute here provides that "probation is considered to be a conviction for the purposes of imposing the conditions of probation and for appeal." Ill.Rev.Stat. Ch. 56½ § 1410(g). In sum, probation is a conviction under § 841(b)(1)(B), and the probations served by Mike and Shorter constitute convictions.

■ In *United States v. Gomez,* 24 F.3d 924 (7th Cir.1994), this circuit also applied *Dickerson* to § 841(b)(1)(B), to conclude that when a person serves probation his subsequent completion of probation and discharge do not alter that conviction. Although § 841(b)(1)(B) relies on state law when it enhances sentences for "prior convictions . . . for a felony under any . . . law of a State," it does so only to define "the difference between a felony and a misdemeanor." *Id.,* 24 F.3d at 930. Section 841(b)(1)(B) does not have any provision analogous to the one Congress added to the gun control statutes. *Id.,* 24 F.3d at 930. Therefore, Shorter's probation, although he completed it and was discharged, constitutes a prior conviction under § 841(b)(1)(B).

### b. Prosecutorial vindictiveness

■ According to defendants, the government's request for enhancement of their sentences before the second trial was a vindictive response to their unwillingness to enter pleas after the mistrial. Two factors were considered in *Whaley* to assess the likelihood of prosecutorial vindictiveness. When a mistrial due to a hung jury is declared by agreement of the parties or *sua sponte* by the court, vindictiveness is unlikely. 830 F.2d at 1479. A prosecutor must not act after a mistrial to infringe upon or chill a defendant's legal rights. *Id.* But if a defendant does not take any action between trials to advance his rights, it is unlikely the prosecutor acted to impede them. *Id.* In *Whaley,* the trial court had declared a mistrial *sua sponte* due to a hung jury, and Whaley could not claim the prosecutor acted to infringe upon or chill his rights because he took no action after the mistrial. *Id.* In sum, no presumption of vindictiveness arose because it was unlikely the prosecutor acted vindictively. *Id.*

The defendants here claim vindictiveness for their decision not to plea bargain. As in *Whaley,* their mistrial was declared due to a hung jury, and they took no action before the second trial. The defendants, though, characterize their inaction as the assertion of a legal right, the right to a trial. They argue that once the prosecutor knew there would be a new trial, he requested enhancement to punish them. This can be inferred, they say, from the timing of the enhancement notification.

Enhancement does not infringe upon the right to trial, but arguably it could be used to chill that right. However, the notice require-

ments of § 851(a)(1) discussed above protect a defendant's due process rights. Also, without more, the timing of the prosecutor's filing does not increase the likelihood of prosecutorial vindictiveness enough to create a presumption of vindictiveness. Finally, putting aside the issue of likelihood, there is no direct evidence that the prosecutor acted "to punish the defendant[s] for standing on [their] legal rights." *Whaley*, 830 F.2d at 1479.

#### c. Conspiracy charges

██ Defendants contend they should have been acquitted as to Count I of the indictment because the government did not provide sufficient evidence of a single over-arching conspiracy, but instead demonstrated the existence of multiple conspiracies. Defendants contend that while there was evidence they conspired with Percy Bratton, there was insufficient evidence connecting them to what they describe as Eric Johnson's conspiracy with Meyna and Neyna Bratton. They therefore argue that the evidence of Eric Johnson's conspiracy should not have been presented to the jury because it confused the jury by increasing the trial's length and the number of conspiracies and persons involved.

Neyna Bratton, who met somebody at a train station for her uncle Percy Bratton, testified she "kind of figured" her uncle was a drug dealer. Percy testified he sent Neyna to the train station because drugs were arriving, and "she had a good idea" why the person she met came into town. The court's instructions to the jury on conspiracy occupy four pages of the trial transcript. They were instructed that "if you are not convinced beyond a reasonable doubt that the defendant knowingly and intentionally joined the conspiracy or scheme alleged in Count I ... you must find the defendant not guilty of that count." They were also told "you should find the defendant guilty of the charge or charges alleged in the ... indictment if you are convinced beyond a reasonable doubt that the defendant knowingly and intentionally joined the single overall conspiracy or scheme, which is alleged in Count 1."

██ This court "will uphold a conviction if, when viewing the evidence in the light most favorable to the government, 'a reasonable trier of fact could have found beyond a reasonable doubt the existence of the single conspiracy charged in the indictment.'" *United States v. Smith*, 995 F.2d 662, 667 (7th Cir.1993), *quoting United States v. Townsend*, 924 F.2d 1385, 1389 (7th Cir. 1991). Neyna Bratton was part of the Eric Johnson conspiracy, and Percy Bratton conspired with the defendants. The testimony connecting Neyna and Percy Bratton therefore is evidence that the defendants were part of one over-arching conspiracy. Moreover, the jury received comprehensive instructions on the law of conspiracies. It was reasonable for the jury here to find the existence of a single conspiracy "even if the evidence at trial was also consistent with a finding that multiple conspiracies existed." *Townsend*, 924 F.2d at 1389.

#### d. Closing argument

 Mike contends he was denied a fair trial because the government's closing argument referred to facts not in evidence and shifted the burden of proof. According to the transcript, the prosecutor said:

> The proper influence [sic] that should be drawn from that is that Percy is telling the truth as whether these people who said they would purchase cocaine over on Milner Street, where he was arrested by the police dozens of times, Mr. Mike, the reasonable inference would be like the other four defendants on trial, deals dope with Percy Bratton. There has been no alternative explanation offered.

According to Mike, the prosecutor stated he was arrested "dozens of times," a reference to facts not in evidence. When a prosecutor's statement is challenged as based on facts not in evidence, the first question is whether, considered in isolation, it was improper. *United States v. Jewel*, 947 F.2d 224, 229 (7th Cir.1991), *quoting United States v. Swiatek*, 819 F.2d 721 (7th Cir.), *cert. denied*, 484 U.S. 903, 108 S.Ct. 245, 98 L.Ed.2d 203 (1987). Then it must be determined whether, considering the entire record, the statement deprived Mike of a fair trial.

Of particular significance here is the incoherence of the prosecutor's statement. The prosecutor contends his statement was clear and did not have the improper meaning Mike attributes to it. According to the prosecutor, his statement meant that cocaine had been purchased on Milner Street "dozens of times." His interpretation of his statement, however, is not the only reasonable one. At the same time, Mike does not advance the only reasonable interpretation either. His claim that the prosecutor said he was arrested "dozens of times" is belied by the lack of an objection when the statement was made. Neither side is convincing as to the statement's meaning. Therefore, taken in its confused context, it did not deprive Mike of a fair trial.

Mike also contends that the prosecutor improperly shifted the burden of proof when he remarked it was reasonable to infer Mike sold drugs and there was "no alternative explanation offered" for his conduct. This remark might be understood as an improper comment on Mike's failure to testify or as a reference to the witnesses who testified and did not provide other explanations for Mike's conduct. Either way, there was an immediate objection which the district court sustained because the remark implied Mike was required to present an explanation. The court instructed the jury to disregard evidence when an objection was sustained, and that Mike was presumed innocent and had the right not to testify. A jury is presumed to follow a court's instructions. *United States v. Henry*, 2 F.3d 792, 796 (7th Cir.1993). Because of the sustained objection and the court's instructions, the prosecutor's ambiguous remark concerning an "alternative explanation" did not deny Mike a fair trial.

### e. Quantity of cocaine

Mike and Gaston contend the district court erred in attributing the conspiracy's entire amount of cocaine to them. The district court's determination of the amount of drugs will be reversed only if it is clearly erroneous. *United States v. Price*, 988 F.2d 712, 720 (7th Cir.1993).

Mike and Gaston are accountable for conduct that was a reasonably foreseeable element of the criminal activity to which they agreed. *United States v. Edwards*, 945 F.2d 1387, 1391–97 (7th Cir.1991). The district court detailed Gaston's connections to the conspiracy as a cocaine processor, safekeeper, and distributor for virtually every cocaine deal Percy Bratton organized. Bratton testified that Gaston's residence was often the location at which cocaine shipments were received and packaged for subsequent delivery. Gaston also acted as Bratton's transfer agent for the organization's tainted money. Mike, the district court noted, delivered Bratton's cocaine to other organization members. He also sometimes replaced Gaston as second in command. In light of these factors it was not clear error for the district court to conclude Gaston and Mike reasonably foresaw the entire amount of cocaine the conspiracy distributed.

The defendants' convictions and sentences are

AFFIRMED.