*Linville,* 10 F.3d at 632 (internal citation omitted).

The Seventh Circuit applied *Linville* in *United States v. Michalek,* 54 F.3d 325 (7th Cir.1995), to refute the same argument that Welch now advances. Bankruptcy proceedings, the court explained, involve "the kind of formalities that undergird orders, injunctions and decrees." *Id.* at 333 (quoting *Linville,* 10 F.3d at 633). The court, construing the Eighth Circuit's decision in *Lloyd,* stated that the gravamen of bankruptcy fraud is "that the defendant [has] abused the process of the bankruptcy court." *Id.* at 332. The

sentence for such a defendant "should be enhanced under § 2F1.1(b)(3)(B) because her abuse of the bankruptcy process makes her more culpable, and thus distinct from, others who have committed offenses under § 2F1.1." *United States v. Cheek,* 69 F.3d 231, 233 (8th Cir.1995) (citing *Michalek,* 54 F.3d at 332 n. 12).

We hold, to the extent any doubt lingered in this circuit after *Linville,* that section 2F1.1(b)(3)(B) applies to violations of specific adjudicatory processes, such as bankruptcy proceedings, not addressed elsewhere in the guidelines.[1]

Accordingly, the district court did not err by enhancing Welch's offense level for violation of a judicial process.

**AFFIRMED.**

**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**EUREKA LABORATORIES, INC.,**
**Defendant–Appellant.**

**No. 96–10006.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 20, 1996.

Decided Dec. 26, 1996.

---

Woon Ki Lau, Lau & Choi, Denver, CO, for defendant-appellant.

Donald W. Searles, Assistant United States Attorney, Sacramento, CA, for plaintiff-appellee.

Before: BEEZER and THOMPSON, Circuit Judges, and GONZALEZ, District Judge.*

DAVID R. THOMPSON, Circuit Judge:

Defendant Eureka Laboratories, Inc. (ELI) and two of its managers were charged in an eight-count superseding information with conspiracy to defraud the United States and other crimes arising from ELI's alleged fraudulent manipulations of analytical tests, in violation of 18 U.S.C. §§ 287, 371, and 1001. After the trial began, ELI pleaded guilty to all counts.

During sentencing, the district court imposed a $1.5 million fine on ELI. The district court also ordered ELI to pay both restitution in the amount of $322,442 and a special assessment of $1600.

ELI appeals its sentence. ELI contends the district court erred: (1) in its factual determination that ELI would be able to pay the fine; and (2) as a matter of law when it imposed a fine that would jeopardize ELI's continued viability, a violation according to ELI of Guideline Section 8C3.3.[1] We have jurisdiction pursuant to 18 U.S.C. § 3742, and we affirm.

* Honorable Irma E. Gonzalez, United States District Judge for the Southern District of California, sitting by designation.

## FACTS

ELI is an analytical testing laboratory engaged in analyzing soil, air, and water samples provided by governmental and private clients. Between February 1991, and August 1993, ELI was awarded contracts with the United States Environmental Protection Agency (EPA), the United States Department of the Army (Army), and the United States Department of the Air Force (Air Force), to analyze environmental samples in connection with the evaluation and remediation of Superfund hazardous waste sites. ELI fraudulently manipulated analytical tests during its performance of these government contracts.

ELI was charged in an eight-count superseding information with conspiracy to defraud the United States and other crimes arising from its fraudulent activities. ELI pleaded guilty to all eight counts.

During sentencing, based upon the invoices paid to ELI on its government contracts and the reasonably foreseeable reprocurement costs incurred by the government agencies as a result of ELI's fraudulent conduct, the district court determined the estimated total loss to the government from ELI's fraudulent activities to be approximately $4.6 million. Using this figure as a base, the court determined that the sentencing guideline range for ELI's fine was between $6,425,013 and $9,178,590.

The presentence report recommended a departure below the fine calculated by reference to the guideline range because of ELI's financial condition. The probation officer calculated ELI's assets, including cash, property, and other equipment, at approximately $2.5 million. Between the years 1990 and 1993, ELI generated from $3.5 to $4.8 million in annual revenues. However, after 1993, ELI's revenues steadily deteriorated because of the government's criminal investigation and the EPA's subsequent debarment of ELI from further federal contracts. In 1994, ELI's work force fell from as many as 78

1. United States Sentencing Commission, *Guidelines Manual*, § 8C3.3 (Nov.1995).

employees to 35 employees, although it was still able to generate $1 million in revenues. In 1995, ELI's work force fell to 19 employees. During the first four months of 1995, ELI generated $264,000 in revenue. After that, ELI's business significantly deteriorated.

In light of ELI's assets and diminishing revenues, the Probation Department recommended a fine of $4,266,852, a substantial downward departure from the minimum guideline fine of $6,425,013. The amount of the recommended fine was equal to the total loss to the government agencies involved ($4,589,295), less the recommended restitution to those agencies ($322,443). To enable ELI to pay that fine, the probation office recommended that the fine be payable in installments over ELI's five-year period of probation.

On November 6, 1995, the date set for ELI's sentencing, the district court questioned whether ELI could pay a fine of $4.2 million (rounded off). The district court directed the probation office to appoint an independent auditor to determine ELI's net revenues over the past several years and to predict ELI's future business prospects.

The independent auditor conducted a limited financial analysis of ELI. The auditor based his review primarily on financial statements and other information provided by ELI's accountant. The auditor found that ELI's current assets far exceeded its current liabilities in all years, and that historically ELI had an excellent ability to pay short term obligations. The auditor found that ELI had a current net book value of $1,516,-000. This included cash on hand and accounts receivable of $427,000, plus equipment and leasehold improvements of $3.6 million, less accumulated depreciation of $2.5 million. The auditor estimated ELI's liquidation value at between $637,000 and $887,000, if it sold its equipment at 10 to 20 cents on the dollar.

According to the auditor, ELI's annual revenues were $5.2 million in 1992, $3.6 million in 1993, $3.2 million in 1994, and $1.3 million in 1995. During the final eight months of 1995, ELI's revenues fell to $300,-000, a decline the auditor attributed to ELI's tarnished reputation. During these months, ELI was the subject of criminal investigation and was debarred from further federal contracts. Such contracts had previously accounted for sixty to seventy percent of ELI's business. The auditor estimated that, for the fiscal year ending in February 1996, ELI would suffer a cash loss of approximately $400,000, and could continue operations for only a period of nine months before needing additional cash. Even with an infusion of cash, the independent auditor estimated that ELI would continue to lose money over the next three years, but would realize a profit of approximately $268,000 in the fourth year of operation, based on projected revenues of $3.5 million. The auditor concluded that ELI's financial condition was bleak. The auditor predicted that ELI would cease doing business sometime during, or prior to the summer of 1996.

After considering the auditor's report, the district court decided to impose a $1.5 million fine, payable in installments over ELI's five-year period of probation.

Pursuant to 18 U.S.C. § 3663(a)(1), the district court also ordered ELI to make restitution to the EPA, Army, and Air Force in the aggregate amount of $322,442. The district court arrived at this figure by adding up the amounts ELI had charged these three government agencies for their contracts.

The district court also ordered ELI to pay a special assessment of $200 per count, a total of $1600.

On appeal, ELI argues that the district court erred, both in its factual determination that ELI would be able to pay the $1.5 million fine, and as a matter of law when, contrary to Guideline Section 8C3.3, the court imposed a fine that would jeopardize ELI's continued viability.

## DISCUSSION

### I. Extent of Downward Departure

■ The extent to which a district court chooses to exercise its discretion to depart downward in sentencing is not reviewable on appeal. *United States v. Riggins*, 40 F.3d 1055, 1058 (9th Cir.1994); *United States v.*

*Vizcarra–Angulo,* 904 F.2d 22, 23 (9th Cir. 1990). This is so regardless of whether the sentence is for a prison term or a fine. *See United States v. Graham,* 946 F.2d 19, 21 (4th Cir.1991); *United States v. Gomez,* 24 F.3d 924, 927 (7th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 280, 130 L.Ed.2d 196 (1994).

To the extent ELI challenges the amount of the fine imposed, its contention is unreviewable on appeal because the extent to which the district court exercised its discretion to depart downward from the sentencing guidelines is unreviewable.

## II. Interpretation of the Guidelines

■■■ "[A]n appeal from a sentence founded on a mistake of law is within our jurisdiction even if the dispute concerns the fact or extent of departure." *Gomez,* 24 F.3d at 927. Here, ELI argues the district court erred as a matter of law because, according to ELI, Guideline Section 8C3.3 prohibits a court from imposing a fine which substantially jeopardizes the continued viability of an organization. This argument raises a question of interpretation of the Guidelines, a question we review de novo. *United States v. Shrestha,* 86 F.3d 935, 938 (9th Cir.1996).

### A. Guideline Section 8C3.3

Guideline Section 8C3.3(a) requires a court to reduce a fine to the extent needed to avoid interfering with a defendant organization's ability to pay restitution to victims.[2] USSG § 8C3.3(a). Guideline Section 8C3.3(b) permits, but does not require, a court to reduce a fine upon a finding that a defendant organization is not, and is not likely to become, able to pay it. USSG § 8C3.3(b). This discretion

2. Guideline Section 8C3.3 provides:
    (a) The court shall reduce the fine below that otherwise required by § 8C1.1 (Determining the Fine—Criminal Purpose Organizations), or § 8C2.7 (Guideline Fine Range—Organizations) and § 8C2.9 (Disgorgement), to the extent that imposition of such fine would impair its ability to make restitution to victims.
    (b) The court may impose a fine below that otherwise required by § 8C2.7 (Guideline Fine Range—Organizations) and § 8C2.9 (Disgorgement) if the court finds that the organization is not able and, even with the use of a reasonable installment schedule, is not likely to become

is authorized only to the extent necessary to avoid substantially jeopardizing the continued viability of the organization. USSG § 8C3.3(b).

■■ Contrary to ELI's interpretation, Guideline Section 8C3.3 does not prohibit a court from imposing a fine that jeopardizes an organization's continued viability. It permits, but does not require, a court in such circumstances and in its discretion, to reduce the fine. The only time a reduction is mandated under section 8C3.3 is if the fine imposed, without reduction, would impair the defendant's ability to make restitution to victims. *See* USSG § 8C3.3(a). Thus, even if the district court's fine would completely bankrupt ELI, neither section 8C3.3(a) nor section 8C3.3(b) precluded the court from imposing such a fine so long as the fine did not impair ELI's ability to make restitution. It did not.

The district court ordered the $1.5 million fine to be paid by ELI in five annual installments. Thus, the first year, the amount payable would be one-fifth of $1.5 million, or $300,000. The independent auditor estimated ELI's total current net assets at $1,516,000. Thus, ELI could first pay $322,442 in restitution to the government, and then from the remaining $1.19 million (rounded off) it could pay the initial $300,000 installment of the fine.[3]

Because ELI would be able to make restitution to the government, the plain language of Guideline Section 8C3.3 did not require the district court to further reduce ELI's fine.

able to pay the minimum fine required by § 8C2.7 (Guideline Fine Range—Organizations) and § 8C2.9 (Disgorgement).
    *Provided,* that the reduction under this subsection shall not be more than necessary to avoid substantially jeopardizing the continued viability of the organization.

3. Even if we consider ELI's present value to be $637,000, the independent auditor's lower range estimate, ELI would still be able to pay both the $322,442 restitution and the first $300,000 installment of the fine, as well as the $1600 special assessment.

B. Comparison With Guideline Section 5E1.2

Guideline Section 5E1.2 instructs courts as to punitive fines for individual, non-corporate defendants. Like Guideline Section 8C3.3(b), Guideline Section 5E1.2(f) allows, but does not require, a district court to reduce or waive the guideline fine when the defendant establishes that he would be unable to pay the fine.[4] USSG § 5E1.2(f); *see also United States v. Altamirano,* 11 F.3d 52, 53 (5th Cir.1993); *United States v. Doyan,* 909 F.2d 412, 414–15 (10th Cir.1990). Unlike Guideline Section 8C3.3, however, Guideline Section 5E1.2 contains a provision which states that a district court "shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine." USSG § 5E1.2(a).

■ Under Guideline Section 5E1.2(a), a court must first determine if an individual defendant is financially able to pay any fine at all. If the defendant successfully demonstrates that he is unable to pay any fine, then a fine may be inappropriate. *See United States v. Haggard,* 41 F.3d 1320, 1329 (9th Cir.1994); *United States v. Robinson,* 20 F.3d 1030, 1033 (9th Cir.1994) (concluding that evidence in record was "sufficiently strong and uncontradicted that the district court would be compelled to conclude that the defendants had shown by a preponderance of the evidence that they were presently unable to pay fines."); *see also United States v. Wong,* 40 F.3d 1347, 1383 (2d Cir.), *cert. denied,* —— U.S.——, 116 S.Ct. 190, 133 L.Ed.2d 127 (1995) (stating that sentencing guidelines do not authorize "the imposition of a fine despite a showing of present and future inability to pay, based upon some remote fortuity like the possibility that a defendant will win a lottery."); *but see United States v. Ahmad,* 2 F.3d 245, 248 (7th Cir. 1993) (stating that, under Guideline Section 5E1.2, "inability to pay [fine immediately] does not justify waiver of the fine, although it may justify a lower fine or the use of installments.").

■ Unlike Guideline Section 5E1.2, Guideline Sections 8C3.3 and 8C2.2, which apply to organizational defendants such as ELI, do not require a sentencing court to consider whether the defendant can pay a fine, so long as the ability to pay restitution is not impaired. *See* USSG § 8C2.2.

C. Factors from 18 U.S.C. § 3572

■ A sentencing court is required by 18 U.S.C. § 3572 to consider several factors when deciding whether to impose a fine and in what amount.[5] A sentencing court is not required, however, to explicitly state the court's application of each section 3572 factor on the record. Rather, if the record, taken as a whole, indicates that the trial court considered the section 3572 factors, the trial

---

**4.** Guideline Section 5E1.2(f) provides, in part: "If the defendant establishes that (1) he is not able and, even with the use of a reasonable installment schedule, is not likely to become able to pay all or part of the fine required by the preceding provisions, or (2) imposition of a fine would unduly burden the defendant's dependents, the court may impose a lesser fine or waive the fine." USSG § 5E1.2(f).

**5.** 18 U.S.C. § 3572 provides:

In determining whether to impose a fine, and the amount, time for payment, and method of payment of a fine, the court shall consider, in addition to the factors set forth in section 3553(a)—

(1) the defendant's income, earning capacity, and financial resources;

(2) the burden that the fine will impose upon the defendant, any person who is financially dependent on the defendant, or any other person (including a government) that would be responsible for the welfare of any person financially dependant on the defendant, relative to the burden that alternative punishments would impose;

(3) any pecuniary loss inflicted upon others as a result of the offense;

(4) whether restitution is ordered or made and the amount of such restitution;

(5) the need to deprive the defendant of illegally obtained gains from the offense;

(6) the expected costs to the government of any imprisonment, supervised release, or probation component of the sentence;

(7) whether the defendant can pass on to consumers or other persons the expense of the fine; and

(8) if the defendant is an organization, the size of the organization and any measure taken by the organization to discipline any officer, director, employee, or agent of the organization responsible for the offense and to prevent a recurrence of such an offense.

**914**

court's findings are adequate. *United States v. Quan–Guerra,* 929 F.2d 1425, 1427 (9th Cir.1991); *United States v. Seale,* 20 F.3d 1279, 1284 (3d Cir.1994); *United States v. Marquez,* 941 F.2d 60, 65 (2d Cir.1991); *see also United States v. Mastropierro,* 931 F.2d 905, 906 (D.C.Cir.1991) (not requiring trial court to state specific application of USSG § 5E1.2(d)(2) factors on record); *but see United States v. Taylor,* 984 F.2d 618, 621 (4th Cir.1993) (citing *United States v. Harvey,* 885 F.2d 181, 182 (4th Cir.1989) as requiring district court to make specific fact findings on section 3572 factors).

■ The record, taken as a whole, indicates the district court considered the section 3572 factors in imposing the $1.5 million fine. In response to ELI's arguments, we focus on the first two factors of section 3572.

The trial court, on its own initiative, ordered the appointment of an independent auditor to evaluate ELI's present net worth and future earning capacity. Based on that report, the trial court chose to impose a fine, the amount of which was approximately equal to ELI's net worth. In explaining that symmetry, the trial court observed that one of two things would happen to ELI. First, ELI could go out of business. If it did go out of business, it could liquidate its assets, valued at over $1.5 million, pay the amount of restitution, and apply the rest of its assets to the fine. Alternatively, ELI could remain in business and try to make a profit. Under either scenario, ELI would be able to make restitution and have assets left over to apply toward the fine. It might not be able to pay the entire fine, but that doesn't matter so long as the court considers, to the extent applicable, the section 3572 factors. Here the district court did that. It was not precluded by 18 U.S.C. § 3572 or by Guideline Section 8C3.3 from imposing on ELI a fine that jeopardized ELI's continued viability.

■ ELI's contention that the court should have considered the impact of the fine on ELI's "dependent" employees pursuant to section 3572(a)(2) is without merit. As a preliminary matter, the language of section 3572(a)(2) seems to refer to dependent family members of an individual defendant, not the employees of a corporate defendant. However-

er, we need not decide that question. Even if section 3572(a)(2) applies to corporate defendants, the mere existence of dependent corporate employees does not preclude a fine on a corporation. Corporations always have employees who could be affected by the imposition of a corporate fine. This fact alone cannot allow a corporation that has engaged in illegal activity to escape paying a fine.

## CONCLUSION

We conclude the district court did not err in imposing the $1.5 million fine on ELI. No statute or Guideline precludes imposition of a fine on a corporate defendant that jeopardizes the corporate defendant's continued viability.

AFFIRMED.