**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Julius Paul SAGER, Defendant–Appellant.**

**No. 99–50330.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 7, 2000

Filed Sept. 22, 2000

---

Judith Rochlin, Los Angeles, California, for the defendant-appellant.

R. Stephen Kramer, Assistant United States Attorney, Los Angeles, California, for the plaintiff-appellee.

Before: NOONAN, TROTT, and BERZON, Circuit Judges.

TROTT, Circuit Judge:

Julius Sager appeals his conviction and sentence imposed for theft of mail and possession of stolen mail in violation of 18 U.S.C. § 1708. On appeal, Sager asserts numerous claims, including ineffective assistance of counsel, prosecutorial misconduct, erroneous admission of evidence under Federal Rule of Evidence 404(b), error in the court's instruction to the jury not to "grade" a postal investigator's investigation, error in imposing enhancements at sentencing for obstruction of justice and loss amount, error in imposing a $10,000 fine, and cumulative error. This court has jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742. We AFFIRM Sager's conviction, but VACATE his sentence and the fine, and REMAND for resentencing.

## BACKGROUND

A complaint filed on June 2, 1998 charged Sager with theft of mail from an apartment on Pearce Street in Huntington Beach, California, on or about April 21, 1998, in violation of 18 U.S.C. § 1708. A grand jury returned an indictment ten days later, including one count covering the offense charged in the complaint and a second count charging him with use of unauthorized access devices—in this case, credit cards—from January 1998 to May 1998, in violation of 18 U.S.C. § 1029(a)(2). On November 10, 1998, the grand jury returned a first superseding indictment charging Sager with four counts: (1) theft of mail on a date unknown in January 1998, in violation of 18 U.S.C. § 1708; (2) possession, on or about March 26, 1998, of a credit card in the name of Trevor Post that was stolen from the mail, in violation of 18 U.S.C. § 1708; (3) possession of stolen mail on or about April 21, 1998, in violation of 18 U.S.C. § 1708; and (4) use of an unauthorized access device from March 26, 1998 to around April 8, 1998, in violation of 18 U.S.C. § 1029(a)(2).

Sager pled not guilty to this first superseding indictment and proceeded to trial. The day before trial, the court granted the government's motion in limine to admit evidence of Sager's prior mail fraud conviction under Federal Rule of Evidence 404(b). In 1996, Sager had pled guilty to completing credit card applications and change of address requests for other people without their consent or knowledge, directing the credit cards to be sent to locations to which he had access, and then using these credit cards to obtain goods, services and cash. The government offered this prior conviction for several purposes, including proving Sager's plan, intent, identity, knowledge, and for purposes of rebutting Sager's anticipated innocent explanation for his acts in this case.

At trial in the case at bar, Tanya Brown, the resident of the Pearce Street apartment, informed the jury that at some time in early 1998 she began receiving mail for credit card accounts belonging to Trevor Post, Allen Gormley, and John Yackle. The addresses for these accounts had been changed to Brown's address in late December 1997, without the various accountholders' authorization or knowledge.

Around the time Brown started receiving the credit card mail, both she and her neighbor, Christian Arce, began occasionally seeing a man, later identified by them as Sager, approach Brown's mailbox. Arce testified that she first saw Sager in late November 1997, and that she thereafter saw him at least two or three times per week. On each occasion, Arce saw Sager walk up to Brown's mailbox, take mail out, look through it, take some with him, and

put the rest back into the mailbox. Arce testified that she never saw Sager with items in his hand as he approached Brown's mailbox, and never saw him deposit any items into the mailbox.

In January of 1998, Arce watched Sager exit a tan-colored Mazda minivan, approach Brown's mailbox wearing latex gloves, and remove mail from the mailbox. The minivan's rear license plate was covered up. On March 30, 1998, Arce again saw Sager look through Brown's mailbox, and on this occasion was able to view the minivan's license plate. Later investigation of DMV records revealed that the van was registered to Sager.

Brown testified that, on April 21, 1998, she saw Sager walk away from her mailbox and enter a tan-colored minivan. She recorded the same license plate number as had Arce. In her car, Brown followed the minivan as it drove off and parked on an adjacent street. Brown then witnessed Sager looking through mail in the driver's seat of the minivan.

Brown and Arce reported their observations to the authorities, and Brown provided some of the suspicious mail she had been receiving. Postal Inspector Barney Morris took charge of the investigation. Inspector Morris discovered that Trevor Post's credit card had been—without Post's authorization—reissued, mailed to the Pearce Street address, and used to make approximately $2,500 in purchases between March 16 and April 8, 1998. This use formed the basis for the second count of Sager's original indictment and the fourth count of the first superseding indictment.

One of the purchases involving Post's credit card occurred on March 26, 1998, at the Nordstrom store in Costa Mesa, California. Inspector Morris went to Nordstrom and interviewed Jeanette Kim, the clerk who had made the sale. At trial, Kim recalled their meeting, and testified that when Inspector Morris presented her with a photo display including a picture of Sager, she told Inspector Morris that Sager's "face looks familiar." On cross-exami-

nation, Sager's attorney asked Kim, "when you looked at that photo spread and you recognized Mr. Sager, did you recognize him as a possible customer?" Kim said "[y]es."

Inspector Morris testified twice before the grand jury and once at trial regarding his interview of Kim. His recollection of their discussion was inconsistent, to say the least. The first time he appeared before the grand jury, Inspector Morris testified that "Ms. Kim identified the photo of Julius P. Sager as the individual she believes made the purchase on that day, March 26, 1998, using the card belonging to Mr. Trevor Post." At the second grand jury, the following exchange occurred:

> Q. What evidence do you have that the defendant actually possessed a Mastercard that was issued to Trevor Post?
>
> A. The identification of him by Ms. Jeanette Kim from Nordstrom's. She is a clerk from Nordstrom's, and she was shown the photo spread on or about May 8 relating to the purchase, and she indicated she believed the individual in the photo spread was the photograph of Julius P. Sager.
>
> Q. And she believed that that was the person who presented the first card, the Mastercard, of Trevor Post to her to make the purchase?
>
> A. That is correct.

Inspector Morris's affidavit attached to the criminal complaint originally filed against Sager conveys a similar message.

At trial, Inspector Morris's testimony mirrored Kim's trial account. He testified that Kim "stated that [Sager] looked familiar" when she was presented with the photo display. Sager's counsel pounced on the discrepancy between this testimony and Inspector Morris's testimony at the grand jury hearings, asking him whether he had testified truthfully before the grand jury. Inspector Morris replied,

> [Kim] didn't say those words exactly. In the context of presenting the photo spread, I was investigating the fraudu-

lent charge, so what I was saying was that she identified Mr. Sager as someone familiar that could have done the transaction. I am trying to clarify to the grand jury what I was doing....No, she did not say that.

Sager's counsel then reminded Inspector Morris that he had been given the opportunity at the second grand jury hearing to clarify or make corrections to his testimony in the first grand jury hearing. When asked whether he had taken advantage of that opportunity with regard to his testimony concerning his interview of Kim, Inspector Morris admitted that he had not.

Finally, when asked by Sager's counsel whether, at the second grand jury hearing, he had truthfully recounted Kim's statements, Inspector Morris responded as follows:

Again, what I am saying is that she identified Julius P. Sager, and in the context that I am talking about, I am talking about the transaction that was completed at Nordstrom's, so when I say she identified the photograph of Julius P. Sager as the individual that made the transaction, I am not saying she specifically said that Julius P. Sager is the one that made this transaction. That's not—that was not my intent.... That's what I said, yes, but that was not my intent, to mislead the grand jury.

The government appears to have known of the variance in Inspector Morris's account of his interview with Kim at least as early as a week prior to trial. In its motion in limine, the government wrote that "[t]he sales clerk who processed a purchase charged to the credit card on March 26 at Nordstroms has identified defendant as someone who looked familiar to her as a customer."

Continuing the cross-examination, Sager's counsel questioned Inspector Morris on various other aspects of his investigation. He asked Inspector Morris about his visits to the various stores at which Post's credit card had been used, including whether he had checked surveillance tapes at the stores, the location of the various surveillance cameras, and who he had spoken to at the stores. He also asked whether Inspector Morris had looked into Sager's explanation for why he frequented the area around the Pearce Street apartments during the months at issue.

At this point, the district court interrupted defense counsel. The following exchange occurred:

The Court: Why is it relevant to backtrack what the investigating agent did? His credibility is to be gauged like any other witness, but whether he conducted a good, imperfect, or otherwise investigation is not relevant is it?

[The Prosecutor]: It's not relevant, but beyond that, I think–

The Court: Do you have an objection?

[The Prosecutor]: I would object on the grounds of relevancy, foundation, and hearsay.

The Court: Granted. What I am saying, members of the jury, is that certainly to the extent that this witness said he made observations, his credibility is like any other witness even though he is an agent. You can believe him or disbelieve him. He is like anybody else in the case, and certainly if the examiner has some basis for suggesting that he is not believable, you can consider it, accept it, reject it, do whatever you want.

What I am telling you is that you are not here to grade his investigation. You are here to grade the product of that investigation, that is, the evidence. If the evidence in this case convinces you beyond a reasonable doubt that the defendant committed crimes, then you ought to find him guilty. If it does not, you ought to find him not guilty. It is as straight forward as that. It doesn't depend on how well you think this agent conducted his investigation. What's important is what's before you by way of evidence.

Sager did not object to the district court's ruling or statements at that time.

As part of the defense case, Sager took the stand. He testified that he was a franchisee of a business called Money Mailer. As a franchisee, he mailed packets of coupons compiled from local businesses to Huntington Beach-area residents. Occasionally, when he found that he had extra coupons, he would deliver them by hand to neighborhoods in Huntington Beach. He claimed that this is what he was doing when he was seen around Brown's Pearce Street apartment. He also testified that he did indeed shop at the Costa Mesa Nordstrom and recognized Kim as an employee in the shirt, belt, and accessory department.

Prior to cross-examining Sager, the government reminded the court that it would inquire into Sager's prior mail fraud conviction and that, in addition to all the purposes raised in its motion in limine, the prior conviction "also goes to credibility." The government then brought out Sager's prior mail fraud conviction in detail.

Also during trial, Sager's counsel attempted to enter into evidence photographs of the area around Brown's mailbox, taken from the vantage point of Arce's window, from where Arce claimed to have witnessed Sager's actions. The government objected to the admission of the photographs because defense counsel had not provided them as part of its discovery obligations. Defense counsel explained that he did not provide the photographs to the government because he "didn't have them.... [Sager] had them and maintained them and was trying to get them blown up." The district court refused to admit the photographs into evidence.

The jury ultimately found Sager guilty of the first three counts of the indictment, but acquitted him of the count charging him with use of an unauthorized access device. Following his conviction, Sager moved for a new trial. In his motion, Sager argued (1) that the court improperly commented on Inspector Morris's testimony; (2) that he had newly discovered evidence regarding the ability to view

Brown's mailbox from Arce's window; (3) that the court erred in refusing to admit his proffered photographs of the area surrounding Brown's mailbox; and (4) that the indictment relied on perjured testimony. The court denied Sager's motion.

At sentencing, the district court enhanced the offense level of Sager's conviction by two levels for obstruction of justice based on perjury, and by three levels for the amount of loss incurred as a result of the unlawful use of Post's credit card. On April 26, 1999, the district court sentenced Sager to 15 months imprisonment—a term that has now apparently expired, a three-year term of supervised release, and a $300 special assessment.

In imposing the obstruction of justice/perjury enhancement, the district court found "by independent evidence that the defendant clearly lied when he testified that he didn't steal the mail from the address in question as charged in the indictment. There's no question in my mind that he lied." The district court then imposed the loss amount enhancement based upon the conduct relevant to count four of Sager's indictment—the unauthorized use of Post's credit card. The court noted that, although there may not have been evidence to prove beyond a reasonable doubt that Sager used the credit card and caused the loss, there was enough evidence to prove the matter by a preponderance of the evidence. In reaching this finding, the court twice relied upon its belief—supported by the government's statements at sentencing—that the card had been used at Nordstrom's on March 26, 1998, and that this was the same date as the theft of the credit card from Brown's mailbox. However, evidence offered at trial indicated that Post's credit card had been used without authorization prior to March 26, thus calling into question the district court's reliance on the timing of the theft and use of the credit card in concluding that Sager had used the card and caused the loss.

The court also fined Sager $10,000 in accordance with the Pre–Sentence Report's ("PSR") recommendation. In a presentencing motion, Sager had explained that, while incarcerated, he had a negative cash flow, and that he would therefore be unable to pay a fine in that amount immediately. The PSR, while recognizing Sager's financial difficulties, noted that Sager had a whole life insurance policy with a cash-surrender value of $24,800, and suggested that the fine could be paid following the policy's liquidation. Sager claimed that such a course would unduly burden his family, including his wife and two sons. Without commenting on Sager's objection regarding the burden the liquidation and payment would impose on his family, the court imposed the PSR's suggested fine, to "be paid as directed by the Probation Department."

## DISCUSSION

Sager raises numerous arguments, only three of which have merit. We will begin our discussion with these issues and then consider the rest.

### A. "Grading the Investigation"

Sager argues that the court improperly limited his examination of postal investigator Morris and improperly instructed the jury to refrain from "grading" Morris's investigation of the theft and use of Post's credit card. "A federal judge has broad discretion in supervising trials, and his or her behavior during trial justifies reversal only if [he or she] abuses that discretion." *United States v. Laurins*, 857 F.2d 529, 537 (9th Cir.1988). A district court has discretion to comment on the evidence, as long as it makes clear that the jury must ultimately decide all questions of fact. *See United States v. Sanchez–Lopez*, 879 F.2d 541, 553 (9th Cir.1989). Because Sager did not object to the district court's statements at issue here, review is under the highly deferential standard of plain error. *See Johnson v. United States*, 520 U.S. 461, 465–67, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997). Thus, Sager must demonstrate that the district court committed error that was plain, clear, or obvious, and that affected substantial rights. *See id.* at 467, 117 S.Ct. 1544. Even if Sager can satisfy this heavy burden, we may, in our discretion, notice the error only if the error " 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.' " *Id.* (quoting *United States v. Olano*, 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)) (alteration in original).

We agree with Sager that the district court committed plain error and abused its discretion by instructing the jury not to "grade" the investigation. In one breath, the court made clear that the jury was to decide questions of fact, but in the other, the court muddled the issue by informing the jury that it could not consider possible defects in Morris's investigation. To tell the jury that it may assess the product of an investigation, but that it may not analyze the quality of the investigation that produced the product, illogically removes from the jury potentially relevant information. As the Supreme Court noted in *Kyles v. Whitley*, 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) "[w]hen ... the probative force of evidence depends on the circumstances in which it was obtained and those circumstances raise a possibility of fraud, indications of conscientious police work will enhance probative force and slovenly work will diminish it." *Id.* at 446 n. 15, 115 S.Ct. 1555; *see also id.* at 442 n. 13, 115 S.Ct. 1555 (discussing the utility of attacking police investigations as "shoddy"); *id.* at 445–49, 115 S.Ct. 1555; *cf. Carriger v. Stewart*, 132 F.3d 463, 481 (9th Cir.1997); *United States v. Hanna*, 55 F.3d 1456, 1460 (9th Cir.1995).

Details of the investigatory process potentially affected Inspector Morris's credibility and, perhaps more importantly, the weight to be given to evidence produced by his investigation. Defense counsel may have been fishing for flaws, but it is obvious that he cast his bait in a promising pond. The district court limited Sager's

attorney from proceeding with an inquiry into the quantitative investigation at the point where the attorney had uncovered a highly damaging flaw in Inspector Morris's several accounts of Kim's statement. On the heels of this small victory, the district court erred (1) in curtailing as irrelevant further examination into the investigatory details, and (2) in informing the jury that it may not consider whether or not the investigation was flawed. In circumstances different from these, a court may properly decide that such a line of investigation is to be limited for some independent evidentiary reason, such as that the evidence would be cumulative. *See, e.g., United States v. Miller,* 874 F.2d 1255, 1266 (9th Cir.1989) (rejecting attempted inquiry on cross-examination into technical violation of FBI's interrogation procedures manual where defendant had already "extensively explored the quality of the investigation and the possible bias that it may indicate," and further inquiry would have been of marginal probative value, outweighed by potential for confusing jury and wasting time). But here, the court's intervention was not proper.

However, Sager's inquiry into Inspector Morris's investigation related primarily, if not exclusively, to Inspector Morris's investigation into Sager's alleged use of the Post credit card, the subject of Count Four of the indictment. The jury acquitted Sager on this Count. The other three counts covered the actual theft of mail and the possession of stolen mail, allegations sufficiently supported by the freestanding testimony of Brown and Arce, even assuming a thorough besmirching of Inspector Morris's own testimony and investigation. Although we conclude that the district court committed plain error, any attack aimed at discrediting Inspector Morris or his investigation would not have affected the outcome of the proceedings. Thus, the error did not affect Sager's "substantial rights." *See United States v. Baron,* 94 F.3d 1312, 1318 (9th Cir.1996). Moreover, the error did not "seriously affect the fairness, integrity, and public reputation of the proceed-ings." *Id.* at 1319. Consequently, we reject Sager's appeal on this issue.

**B. Sentencing Enhancements**

■ The district court enhanced the offense level of Sager's conviction for obstruction of justice and loss amount, pursuant to United States Sentencing Guidelines ("U.S.S.G.") sections 3C1.1 and 2B1.1(b)(1)(D), respectively. Sager advances a single argument in support of his belief that the district court's factual findings supporting these enhancements were clearly erroneous. He contends that the district court erred in finding that Post's credit card was stolen on the same day as it was used at Nordstrom's, March 26. The district court's factual findings at sentencing are reviewed for clear error, *see United States v. Shannon,* 137 F.3d 1112, 1119 (9th Cir.1998), and must be supported by a preponderance of the evidence, *see United States v. Collins,* 109 F.3d 1413, 1420 (9th Cir.1997).

■ The district court did not clearly err in imposing an enhancement for obstruction of justice based on perjury. The district court explicitly stated at sentencing that the only question regarding the obstruction of justice enhancement centered on Sager's denial at trial that he had stolen mail from Brown's Pearce Street mailbox. The court then found "by independent evidence that the defendant clearly lied when he testified that he didn't steal the mail from the address in question as charged in the indictment. There's no question in my mind that he lied." Sager's testimony was contradicted by testimony from Arce and Brown and significant circumstantial evidence. The district court's finding therefore was not clear error.

■ However, the district court did clearly err in stating that Post's credit card had been stolen on March 26. Uncontroverted evidence demonstrates that Post's credit card had been used without authorization prior to March 26, the day that it was used at Nordstrom's. It is true

that the timing of the theft of Post's credit card was only one factor the district court considered in concluding that Sager was responsible for the loss amount resulting from Post's credit card's use. However, because we do not know how heavily this erroneous finding weighed in the district court's consideration of the loss amount enhancement, we vacate Sager's sentence and remand for reconsideration.[1]

### C. Amount of Fine

■ The district court's decision to impose a $10,000 fine under U.S.S.G. § 5E1.2 provides further support for our decision to vacate Sager's sentence. Sager argues that a $10,000 fine unduly burdens his dependents and that he has demonstrated an inability to pay. The district court's determination that Sager had the ability to pay the fine is a finding of fact reviewed for clear error. *See United States v. Ladum,* 141 F.3d 1328, 1344 (9th Cir.1998). Sager bore the burden of proving inability to pay. *See id.*

■ Sager filed a formal objection to the PSR's recommendation that he pay a $10,000 fine. In his objection, Sager argued that it would be unduly burdensome for the court to order him to pay the $10,000 fine by cashing in a life insurance policy, due to his family's negative monthly cash flow during his imprisonment and because the policy was intended for the benefit of his wife and two children. For reasons unknown to this court, Sager's attorney did not raise this issue at the time of sentencing.

Section 5E1.2(a) of the sentencing guidelines provides that a court "shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine." U.S.S.G. § 5E1.2(a). In determining the amount of a fine to impose, courts "shall consider," among other things, a defendant's ability to pay the fine, U.S.S.G. § 5E1.2(d)(2), and the bur-

den imposed by the fine on the defendant and his dependents, U.S.S.G. § 5E1.2(d)(3). *See also United States v. Ortland,* 109 F.3d 539, 549 (9th Cir.1997). Moreover, under section 5E1.2(e), if a defendant establishes inability to pay a fine in either a lump sum or through an installment plan, or if the fine would unduly burden the defendant's dependents, a court may impose a lesser fine or waive the fine, and must consider "alternative sanctions [such as community service] in lieu of all or a portion of the fine." U.S.S.G. § 5E1.2(e).

Here, the district court imposed a lump sum fine of $10,000 without making clear that it had considered the question of undue burden to Sager's dependents. In this case, that question is a substantial one. The record indicates that the only way Sager could both pay the fine and provide for his family's needs while he was in prison would have been to cash in a life insurance policy intended to benefit the family in the event of his death. In *United States v. Quan–Guerra,* 929 F.2d 1425 (9th Cir.1991), the defendant relied on an Eighth Circuit opinion in arguing that "the district court must make findings on the record which demonstrate that the sentencing court has taken into account all the factors that, in assessing a fine, the court is required to take into consideration under the Guidelines." *Id.* at 1427 (quoting *United States v. Walker,* 900 F.2d 1201, 1206 (8th Cir.1990)). Without expressing an adoption of that rule, the *Quan–Guerra* court held that its "review of the record satisfie[d][it] that the district court considered all required factors in evaluating [the defendant's] ability to pay this fine." *Id.; see also Ortland,* 109 F.3d at 549 (citing *Quan–Guerra* for the proposition that "findings need not be express or on the record"); *cf. United States v. Eureka Laboratories, Inc.,* 103 F.3d 908, 913–14 (9th Cir.1996) (analyzing different statutory provision similarly requiring the consid-

---

1. Sager's 15–month period of incarceration imposed under his original sentence has now expired. However, the loss-amount enhance- ment may have had other consequences under the sentencing guidelines' calculations.

eration of factors prior to imposing a fine, and concluding that a court need not "explicitly state the court's application of each [18 U.S.C. §] 3572 factor on the record. Rather, if the record, taken as a whole, indicates that the trial court considered the section 3572 factors, the trial court's findings are adequate.") (citing *Quan–Guerra*, 929 F.2d at 1427).

■ Although our circuit has not interpreted section 5E1.2 as requiring that district courts make explicit factual findings on the record with regard to the burden issue (or other section 5E1.2(d) and (e) factors), a district court should, in some way, make clear that it has considered the issue. Otherwise, we are utterly incapable of conducting any meaningful appellate review of the district court's compliance with section 5E1.2(d)'s mandate. Because the district court failed to demonstrate such consideration in Sager's case, we do not know if it accurately determined whether the $10,000 fine would unduly burden Sager's dependents. This error, along with the district court's error in finding that the Post credit card had been stolen on March 26, leads us to vacate the imposition of the fine and remand to reconsider whether the $10,000 fine would unduly burden Sager's dependents and, if so, whether alternative sanctions should be imposed instead of all or part of the fine.

■ We do note, however, that this error was not entirely the fault of the district court. We expect counsel to speak up at sentencing on behalf of their clients' interests, not sit quietly by and allow an oversight to occur. It is technically enough, of course, to file a written objection to the PSR, but an astute attorney filing such an objection would also raise the issue again at sentencing if it appears to have gone unaddressed.

## D. Evidence of Prior Conviction

■ Sager argues that the district court erred by allowing the prosecutor to question him regarding his earlier conviction for mail fraud. We review the district court's decision to admit evidence of Sag-

er's prior crime for an abuse of discretion. *See United States v. Rrapi*, 175 F.3d 742, 748 (9th Cir.), *cert. denied*, —— U.S. ——, 120 S.Ct. 261, 145 L.Ed.2d 219 (1999).

Federal Rule of Evidence 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . ." Here, the government filed a motion in limine seeking to admit the Rule 404(b) evidence for purposes of identity, intent, knowledge, motive, method, common plan and scheme. The government also argued that the prior conviction "rebuts [Sager's] explanation that he was merely present in the vicinity of the apartment mailbox because he was in the business of distributing flyers." In considering the motion, the court agreed with the government that the evidence "fit in many ways . . . the language and categories of 404(b)." The court also noted that "the prior scheme fits very well within the parameters of 404(b)." The court granted the motion the day before trial.

At the very least, the prior conviction was admissible to rebut Sager's claimed innocent motives for his presence at the mailboxes in question, *see United States v. Sanchez–Robles*, 927 F.2d 1070, 1078 (9th Cir.1991) (evidence outside scope of 404(b) where offered to rebut defendant's defense), and thus was offered for a purpose other than to "prove the character of a person in order to show action in conformity therewith." Fed.R.Evid. 404(b). The district court did not abuse its discretion in admitting the evidence of Sager's prior mail fraud conviction.

## E. Ineffective Assistance of Counsel

Sager claims that his trial counsel's assistance was ineffective. Sager argues that his attorney provided ineffective assistance by failing to move to dismiss, pur-

suant to the Speedy Trial Act, two to three counts of the First Superseding Indictment. Sager contends also that his attorney provided ineffective assistance by failing to properly submit several photographs to the prosecutor so that the photographs could have been received as exhibits at trial. Finally, Sager focuses on what he alleges was perjured testimony at the grand jury proceeding to assert that his attorney provided ineffective assistance by failing to move to dismiss the indictment.

 Claims of ineffective assistance of counsel are reviewed de novo. *See United States v. Mack,* 164 F.3d 467, 471 (9th Cir.1999). Ineffective assistance claims, however, are ordinarily left for collateral habeas proceedings due to the lack of a sufficient evidentiary record as to "what counsel did, why it was done, and what, if any, prejudice resulted." *United States v. Quintero–Barraza,* 78 F.3d 1344, 1347 (9th Cir.1995) (quoting *United States v. Molina,* 934 F.2d 1440, 1446 (9th Cir. 1991)). Ineffective assistance claims will be considered on direct review only where the record is sufficiently developed to permit determination of the issue or where legal representation is so inadequate that the defendant obviously was denied his Sixth Amendment right to counsel. *See United States v. Robinson,* 967 F.2d 287, 290 (9th Cir.1992). Here, the record is not sufficiently developed and Sager's counsel was not so inadequate as to obviously deny Sager his Sixth Amendment right to counsel. We therefore decline to consider Sager's claims of ineffective assistance on direct appeal.

**F. Prosecutorial Misconduct**

 Sager relies on *United States v. Basurto,* 497 F.2d 781, 785–87 (9th Cir. 1974), to claim that the prosecutor committed misconduct and violated his Fifth Amendment due process rights by failing to move to dismiss the indictment on be-

half of the government because of Inspector Morris's alleged perjury at the grand jury. Inspector Morris's testimony varied significantly over time in its description of Kim's identification of Sager. The prosecutor appears to have known about this variance at least as early as a week prior to trial. While we find it hard to understand why a prosecutor would not resolve this discrepancy in some way prior to trial, there is no evidence that the prosecutor knew that Inspector Morris committed perjury in his testimony to the grand jury, as opposed to making a misstatement, material as though that misstatement appears to be.[2] Thus, Sager may not prevail in his due process/prosecutorial misconduct argument under *Basurto. See id.* at 785–87 (requiring government's knowledge that grand jury testimony is perjurious).

**G. Cumulative Error**

 We have found only one error—the "grading the investigation" comment—occurred during trial; the remaining errors occurred only at sentencing. One error is not cumulative error. We therefore reject Sager's final argument, that cumulative error warrants a new trial.

**CONCLUSION**

We affirm Sager's conviction. However, we vacate and remand Sager's sentence for the district court to (1) reconsider the loss amount enhancement as it relates to the timing of the theft of Post's credit card, and (2) consider the burden imposed on Sager's dependents by the $10,000 fine imposed.

AFFIRMED IN PART, VACATED and REMANDED IN PART.

---

2. Sager omitted the grand jury transcripts from his Excerpts of Record on appeal. Hence, we have relied just on those portions

of the transcript referred to by counsel in his cross-examination of Inspector Morris at trial.