NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 09-10172 |
| Plaintiff - Appellee, | D.C. No. 2:03-cr-00384-WBS |
| v. | |
| MICHAEL LABRECQUE, | MEMORANDUM[*] |
| Defendant - Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 09-10179 |
| Plaintiff - Appellee, | D.C. No. 2:03-cr-00384-WBS |
| v. | |
| ALLEN HARROD, | |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Eastern District of California
William B. Shubb, Senior District Judge, Presiding

Argued and Submitted March 14, 2011
San Francisco, California

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Before: PAEZ, BERZON, and BEA, Circuit Judges.

1.      There was not sufficient evidence that sexually explicit visual images of J. were produced "as a consequence of" Allen Harrod transferring and Michael LaBrecque obtaining custody or control over J., as required by 18 U.S.C. § 2251A.

There was evidence that LaBrecque knew the sexually explicit photographs of J. were going to be taken. There was not, however, any evidence that J.'s mother ever spoke to LaBrecque about the photos before they were taken, or that LaBrecque exercised any control over J. with regard to the photo shoot. Neither the travel of J. to the LaBrecque home, nor the eventual transfer of sole custody of J. to LaBrecque, was enough to satisfy the "as a consequence" requirement of the statute.

Moreover, although the evidence indicates that Harrod may have transferred, and LaBrecque obtained, some measure of custody or control over J. when he arrived at the LaBrecque household, J.'s mother also continued to exercise control over him in many respects as long as she was in Texas. In particular, the evidence indicates that J.'s mother, not LaBrecque, had "supervision over or responsibility for" J. with regard to the photo shoot. 18 U.S.C. § 2256(7). In other words, it was "as a consequence of" J.'s mother having control over him with regard to the photo

2

shoot that she was able to direct and take the pornographic photographs. Conversely, there was no evidence that the photographs were taken "as a consequence of" any custody or control LaBrecque may have exercised over J. while his mother was still in Texas.

In sum, there was insufficient evidence in this case for a rational trier of fact to conclude, beyond a reasonable doubt, that Harrod transferred, and LaBrecque obtained, custody or control of J. "with knowledge that, *as a consequence of* the . . . transfer . . . or obtaining of custody," J. would be portrayed in sexually explicit photographs. 18 U.S.C. § 2251A (emphasis added); *see Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We therefore reverse Harrod's conviction on Count Two and LaBrecque's conviction on Count Three.

**2.** In contrast, there is sufficient evidence to support LaBrecque's conviction on Count One.[1] Viewed in the light most favorable to the prosecution, the evidence was sufficient for a rational jury to conclude, beyond a reasonable doubt, that prior to J.'s July 1991 trip to Texas, LaBrecque intended that one of the dominant purposes of the trip was criminal sexual activity involving J. *See United*

---

[1]LaBrecque was convicted of aiding and abetting J.'s interstate travel with intent to engage in criminal sexual activity. The only issue on appeal is whether there was sufficient evidence for a reasonable jury to conclude that LaBrecque had the requisite intent.

3

*States v. Kinslow*, 860 F.2d 963, 967 (9th Cir. 1988) ("In this circuit, a federal crime under 18 U.S.C. § 2423 exists if the immoral activity is 'one of the dominant purposes' of the transportation." (quoting *United States v. Fox*, 425 F.2d 996, 999 (9th Cir. 1970))), overruled on other grounds by *United States v. Brackeen*, 969 F.2d 827 (9th Cir. 1992).

There was circumstantial evidence from which a reasonable jury could have inferred that, before J.'s interstate travel, LaBrecque intended that the photo shoot occur. The most important of this evidence was that LaBrecque, unsolicited, told J.'s mother the location of the Polaroid camera very shortly after her arrival at his home. There was also evidence that LaBrecque bought film for the camera and made comments before and after the photo shoot that led J. to believe LaBrecque knew about the photo shoot. Also, before the 1991 trip, Harrod had already planned for J. to receive sexual "training" in Texas, and LaBrecque and Harrod communicated frequently about their "religion," supporting the inference that LaBrecque also intended that J. would be involved in sexual activity after his mother left, as he eventually was.

**3.**     LaBrecque and Harrod also challenge their 15-year sentences for Counts One and Seven. We agree, as conceded by the government, that the district court erred in imposing 15-year sentences for Counts One and Seven. At the time

4

of the offense conduct, the maximum statutory sentence for a violation of 18 U.S.C. § 2423(a) was 10 years.

4.      Finally, LaBrecque and Harrod both challenge the $25,000 fines imposed by the district court.

a.      Harrod and LaBrecque did not meet their burden of demonstrating their inability to pay the fines. Their representation by court-appointed counsel is a "significant indicator[] of present inability to pay," U.S.S.G. § 5E1.2, app. note 3. But, that representation does not automatically satisfy their burden of proving they are unable to pay the fine, now or in the future. *See United States v. Orlando*, 553 F.3d 1235, 1240 (9th Cir. 2009); *United States v. Ladum*, 141 F.3d 1328, 1344 (9th Cir. 1998). Both Pre-Sentence Reports (PSRs) recommended the $25,000 fines, based in large part on the lack of financial information disclosed by the defendants. LaBrecque's and Harrod's failure to disclose financial information to the Probation Office is a factor supporting the district court's conclusion that they did not demonstrate inability to pay the fines. *See Orlando*, 553 F.3d at 1240; *United States v. Brickey*, 289 F.3d 1144, 1152 (9th Cir. 2002), overruled on other grounds by *United States v. Contreras*, 593 F.3d 1135 (9th Cir. 2010) (en banc); *United States v. Rafferty*, 911 F.2d 227, 232-33 (9th Cir. 1990).

5

The only information Harrod provided, other than his relatively sparse Financial Affidavit submitted years before sentencing for the purpose of getting appointed counsel, was that he received $900 per month from his military retirement, which was barely sufficient to cover child support payments. The district court had no information regarding the amount of child support payments or the identity or age of Harrod's dependent(s). Harrod will not have to pay child support payments forever, and his military pension presumably could be used at some future date to pay off the fine in installments, especially as he will be imprisoned for life and will have few self-support expenses. Under these circumstances, there was no clear error in the district court's determination that Harrod had failed to demonstrate by a preponderance of the evidence that he could not presently or in the future, pay the fine. *See Ladum*, 141 F.3d at 1344; *United States v. Robinson*, 20 F.3d 1030, 1033 (9th Cir. 1994).

LaBrecque provided even less information than Harrod. His counsel had advised him not to provide any information to the Probation Office, and his objection to the PSR's recommendation of a $25,000 fine requested the district court to infer just from the fact that he had appointed counsel that he had insufficient assets to pay the fine. His outdated Financial Affidavit indicated that he and his wife earned $2,900 per month prior to his arrest and owned three cars

6

worth a total of $5,000, but that they did not have any bank accounts. LaBrecque's counsel told the probation officer that the cars had been sold, but provided no details about the money received from the sales. The district court explicitly faulted LaBrecque for failing to disclose financial information, and noted that he could "have some holdings" despite having been in custody since 2003. Considering LaBrecque's previous household income and lack of disclosure regarding bank accounts or the proceeds from the sale of his vehicles, we find no clear error in the district court's determination that he had also failed to meet his burden of proving that he was unable to pay the fine.

    **b.**      The district court's imposition of the $25,000 fine was reasonable. *See Orlando*, 553 F.3d at 1239-40. The district court is required to impose a fine in all cases in which the defendant does not prove that he is unable to pay. *United States v. Haggard*, 41 F.3d 1320, 1329 (9th Cir. 1994). The court does not have to be explicit about its consideration of each statutory factor under 18 U.S.C. §§ 3553 and 3572 and U.S.S.G. § 5E1.2(d). *See United States v. Sager*, 227 F.3d 1138, 1147-48 (9th Cir. 2000); *United States v. Eureka Labs., Inc.*, 103 F.3d 908, 913 (9th Cir. 1996); *United States v. Quan-Guerra*, 929 F.2d 1425, 1427 (9th Cir 1991). It is sufficient that the record as a whole indicates that the trial court

7

considered the relevant factors. *Sager*, 227 F.3d at 1148; *Eureka Labs.*, 103 F.3d at 913-14.

In this case, the record does not indicate in any concrete way that imposition of a fine would cause an undue burden to the defendants' dependents or affect the defendants' ability to pay state-ordered restitution. Adoption of the PSRs' recommended $25,000 fines without explicitly considering these factors was therefore not unreasonable. *See Sager*, 227 F.3d at 1147-48 (remanding for resentencing when the record indicated that a fine would effect the defendant's family, and the district court had failed to make clear whether it had considered that factor).

We therefore **REVERSE** Counts Two and Three; **AFFIRM** Count One; **VACATE AND REMAND FOR RESENTENCING** as to Counts One and Seven; and **AFFIRM** the imposition of the fines.

*United States v. LaBrecque*, Nos. 09-10172, 09-10179

BEA, Circuit Judge, concurring:

I join the majority as to Parts 2–4 of the memorandum disposition. I concur in the result as to Part 1, but on different grounds.

The relevant criminal section, 18 U.S.C. § 2251A(a), provides:

(a) Any parent, legal guardian, or other person having custody or control of a minor who sells or otherwise transfers custody or control of such minor, or offers to sell or otherwise transfer custody of such minor either--

> (1) with knowledge that, as a consequence of the sale or transfer, the minor will be portrayed in a visual depiction engaging in, or assisting another person to engage in, sexually explicit conduct . . . .

18 U.S.C § 2251A(a). Similarly, 18 U.S.C. § 2251A(b) criminalizes the same conduct by the one who "purchases or otherwise obtains custody or control" of the minor.

The majority finds there was insufficient evidence that the sexually explicit visual images of J. were produced "as a consequence" of a transfer of custody or control. The majority holds that other interim conduct—namely, J.'s mother's initiation of the sexually explicit photo shoot—prevented satisfaction of the "as a consequence" requirement. I disagree.

Webster's dictionary defines "consequence" as "that which follows from any act, cause, principle, or series of actions; an event or effect produced by some

preceding act or cause; a result." *Webster's New Twentieth Century Dictionary of the English Language Unabridged* (Jean L. McKechnie ed., 1979). The evidence in the record, viewed in the light most favorable to the prosecution, shows that both Harrod (in California) and LaBrecque (in Texas) knew that the sexually explicit photo shoot was intended; and thus, would be a consequence—or a result—of J.'s trip to Texas. As to Harrod: (1) Harrod informed J.'s mother, prior to the trip to Texas, that she was to conduct the photo shoot; and (2) Harrod told J.'s mother when the time was right to conduct the photo shoot. Based on this evidence, a rational jury could conclude both LaBrecque and Harrod knew J.'s sexually explicit depiction would occur as a consequence of his trip to Texas. As to LaBrecque: (1) LaBrecque pointed out the location of the Polaroid camera to J.'s mother without being asked; (2) LaBrecque purchased the film for the camera; (3) LaBrecque made comments before and after the photo shoot[1] which led J. to believe LaBrecque knew about the photo shoot; and (4) it was LaBrecque's home and he was the regional "patriarch." Indeed, in Part 2, the majority finds there was sufficient evidence that "LaBrecque *intended* that one of the dominant purposes of

---

[1] When J. was on his way upstairs for the photo shoot, LaBrecque told J. to "have fun." J. did not remember the specific comment after the photo shoot, but testified that LaBrecque said something that caused J. to feel "scared' and to believe that LaBrecque "knew what was going on."

2

the trip was criminal sexual activity involving J.." Memorandum Disposition at 3 (emphasis added). If LaBrecque intended that the photo shoot occur, he certainly knew it would be a consequence of J.'s trip to Texas.

I concur in the result as to Part 1, however, because I would hold Harrod did not "transfer," and LaBrecque did not "obtain," custody or control of J.. The evidence shows there was, at most, a partial transfer of custody or control from Harrod to LaBrecque. J.'s mother was present in the LaBrecque house at all relevant times. At the time of the photo shoot, the evidence showed J.'s mother was the one in charge—J.'s mother ordered the participants upstairs into the bedroom and conducted the photo shoot. A father and mother, living together, normally have joint custody of their minor child. A father has not "transfer[red] custody or control" of his child when the mother is present and actively exercising custody and control over that child.

An examination of the preceding code section—18 U.S.C. § 2251—reinforces this conclusion. That section provides:

> Any parent, legal guardian, or person having custody or control of a minor who *knowingly permits* such minor to engage in, or to assist any other person to engage in, sexually explicit conduct for the purpose of producing [child pornography] . . . .

18 U.S.C. § 2251(b) (emphasis added). "Knowing permission" is what occurred in

3

this case. J. traveled with his mother to Texas, and those who had custody and control over him "knowingly permit[ted]" a sexually explicit photo shoot. Section 2251A, however, punishes an act which is much worse: a purchase, sale, or other transfer of a minor for purposes of producing child pornography. *Id.* § 2251A(a)–(b). Accordingly, § 2251A's maximum punishment is life in prison, *id.* 2251A(c), while § 2251's maximum punishment is 30 years in prison, *id.* 2251(e).

Therefore, I would hold that although LaBrecque and Harrod knew the sexually explicit photo shoot of J. would occur as a consequence of J.'s trip to Texas, J.'s mother's exercise of custody and control over J. necessarily prevented a "transfer" of custody or control. For these reasons, I concur in the reversal of counts two and three.