**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

JUN 19 2015


MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 12-50213 |
| Plaintiff - Appellee, | D.C. No. 2:10-cr-01013-SJO-2 |
| v. | |
| TARYN JOHNSTON, | MEMORANDUM* |
| Defendant - Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 12-50286 |
| Plaintiff - Appellee, | D.C. No. 2:10-cr-01013-SJO-1 |
| v. | |
| FRANK EUGENE JOHNSTON, | |
| Defendant - Appellant. | |

Appeals from the United States District Court
for the Central District of California
S. James Otero, District Judge, Presiding

Argued and Submitted February 2, 2015
Pasadena California

---

\*      This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Before: PREGERSON, KLEINFELD, and NGUYEN, Circuit Judges.

A husband and wife, Frank and Taryn Johnston, were convicted on 27 different counts. Frank Johnston was charged with wire fraud in Counts 1–22, with theft of government property in Count 23, with obstruction of justice in Count 26, and with making false statements in Count 27. Taryn Johnston was charged in Counts 24 and 25 with making false statements. Defendants were tried together in the same trial on Counts 1–23 and Counts 24 and 25 and found guilty on all counts. Frank Johnston was tried in a separate trial on Counts 26 and 27 and found guilty. Defendants appeal all of their convictions. We have jurisdiction, 28 U.S.C. § 1291, and we affirm.

We address defendants's challenges to the sufficiency of the evidence underlying their convictions, considering whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Nevils*, 598 F.3d 1158, 1163–64 (9th Cir. 2010) (en banc) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). First, regarding Counts 1–23, Frank Johnston contends that any misrepresentations he made regarding Taryn

2

Johnston's work hours were immaterial because Taryn Johnston was a salaried employee whose compensation did not depend on how many hours she worked or logged in her timesheets. We reject this argument for two reasons. First, from 2002 to 2004, Frank Johnston approved time and attendance reports for Taryn Johnston that resulted in Taryn Johnston receiving substantial overtime and holiday premium pay. Second, the jury could have rationally concluded that Frank Johnston's role in Taryn Johnston's failure to request leave during times when she was attending to personal matters deprived the government of the leave hours themselves, which have monetary value and can be cashed out upon an employee's resignation.

Next, regarding these same counts, Frank Johnston argues that there was insufficient evidence that he had the specific intent to defraud the government because his actions were intended to facilitate his wife working from home to care for their seriously ill son. This argument fails because Frank Johnston's reasons or motivations for his actions are distinct from the question of whether he acted with the requisite intent to "deceive or cheat" the government. *See, e.g., United States v. Crandall*, 525 F.3d 907, 911–12 (9th Cir. 2008).

We likewise conclude that the evidence is sufficient to sustain Taryn Johnston's conviction, on Count 24, of making a false statement to investigators.[1] When asked if she worked all the hours on her time-and-attendance sheets, Johnston answered yes. However, Johnston did not work those hours. Indeed, the jury heard evidence that she accepted outside employment and attended to personal matters during her normal workday, and completed only four significant projects from 2002 to 2008. She argues that she was allowed to record those hours as worked even if she did not actually do work because she was ready, willing, and able to work. However, a reasonable jury could have still found that Johnston lied to investigators because her argument fails to explain the extensive overtime hours she claimed. Finally, Johnston was not available to work while at frequent doctor's appointments or while performing work for another organization, and yet she still claimed to have worked during those times.

---

[1] Taryn Johnston's due process arguments regarding the circumstances of the interview with Special Agent Gowins are waived because they were not raised in her opening brief. *See, e.g.*, *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999). Moreover, these arguments lack merit because Johnston was advised of her right to consult an attorney prior to the interview, and was advised that lying in the interview could result in criminal prosecution.

We likewise reject Taryn Johnston's argument that Special Agent Gowins's question on this subject was too vague to form the basis for a prosecution for a violation of 18 U.S.C. § 1001. The jury could have rationally concluded that Johnston understood the question as being directed at the totality of her time and attendance reports since the date of the 2001 memorandum from John McAllister. *See United States v. Sainz*, 772 F.2d 559, 562 (9th Cir. 1985). The evidence is sufficient to sustain Taryn Johnston's conviction on Count 24.

In Count 25, Taryn Johnston was convicted of making another false statement to investigators. When asked if she had shared the login information to her work email account with a co-worker, she answered no. She acknowledges that this statement was false but argues that she recanted it by calling investigators later that day to correct it.[2] Johnston's contention is foreclosed by *United States v. Salas Camacho*, 859 F.2d 788, 791–92 (9th Cir. 1988) (holding that correction of false statement to customs inspector did not render earlier false statement immaterial because correction did not occur until it became clear that customs inspector had become suspicious of the initial false statement). Here, Johnston's

---

[2] It should be noted that the Ninth Circuit has not resolved the issue of whether there exists a "recantation" defense to prosecutions for violations of 18 U.S.C. § 1001. The cases cited by Johnston pertain to a defense to perjury charges.

attempted correction of her false statement is insufficient under *Salas-Camacho* because it did not occur until several hours after she gave the statement and signed a written affidavit attesting to its truthfulness, and after she learned that Special Agent Gowins already possessed information contradicting her initial statement.

Finally, Frank Johnston argues that the district court abused its discretion in not dismissing Counts 26 and 27 on due process grounds or, alternatively, pursuant to its inherent supervisory powers. Reviewing de novo, *United States v. Barrera-Moreno*, 951 F.2d 1089, 1091 (9th Cir. 1991), the district court did not err in denying Johnston's motion to dismiss on due process grounds. We reach this conclusion because the district court did not clearly err in finding that the prosecutors were unaware of Special Agent Cormier's and Harris's false grand jury testimony prior to the commencement of trial and the attachment of jeopardy. *United States v. Sager*, 227 F.3d 1138, 1149 (9th Cir. 2000); *United States v. Basurto*, 497 F.2d 781, 785 (9th Cir. 1974).

We likewise conclude, on abuse of discretion review, *see United States v. Struckman*, 611 F.3d 560, 574–75 (9th Cir. 2010), that the district court properly denied Johnston's motion to dismiss the indictment under its supervisory powers.

6

The district court found there was no prosecutorial misconduct with regards to Special Agents Harris's and Cormier's likely false trial testimony. The district court's finding was not clearly erroneous and justified its denial of Johnston's motion to dismiss on this ground. *See, e.g., United States v. Chapman*, 524 F.3d 1073, 1085 (9th Cir. 2008) (noting that dismissal of indictment is only permitted in cases of flagrant prosecutorial misconduct). Moreover, the government disavowed any reliance on the testimony of Special Agents Harris or Cormier, and made the jury aware of the problems with their testimony. The government's actions constituted adequate "lesser remedial action" as compared to a dismissal of the indictment. *See id.* at 1087. Finally, the government's grant of immunity to Special Agent Harris was not misconduct justifying dismissal of the indictment, but rather was a reasonable way of ensuring that the jury became fully aware of the facts surrounding the drafting of the letter to the United States Attorney in Florida.

**AFFIRMED.**